The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Richard KAZMIERSKI and Kathy Knafla, Defendants–Appellees.

No. 00SA395.

Supreme Court of Colorado, En Banc.

June 25, 2001.

David J. Thomas, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, CO, Attorneys for Plaintiff–Appellant.

Cynthia Sheehan, Denver, CO, Attorney for Defendant–Appellee Richard Kazmierski.

Casey J. Mulligan, Boulder, CO, Attorney for Defendant–Appellee Kathy Knafla.

Justice KOURLIS delivered the Opinion of the Court.

In this interlocutory appeal, the People contest the trial court's suppression of evidence obtained pursuant to the execution of a search warrant. The trial court determined that certain statements made by the officer-affiant in the affidavit in support of the warrant were not accurate and were made with reckless disregard for the truth. The trial court thus struck those statements from the affidavit and then examined it to determine whether the remaining assertions established probable cause. The trial court ruled that the resultant affidavit was conclusory, lacking in particularity, and insufficient to establish probable cause for the issuance of a search warrant. Accordingly, the trial court applied the exclusionary rule and suppressed the physical evidence obtained during the execution of the search warrant.

The People make two arguments on this appeal: first, that the redacted affidavit does establish sufficient probable cause for issuance of a search warrant for the defendants' residence; and second, that even if the affidavit is lacking, it is not so flawed as to undermine the application of the good-faith exception to the exclusionary rule, which would protect evidence seized in accordance with a lawfully issued warrant. We agree with the trial court that the affidavit does not establish probable cause to search the residence. Further, we decline to apply the good-faith exception to protect evidence seized pursuant to a search warrant obtained and executed by an officer who made statements in the supporting affidavit with reckless disregard for the truth.

I.

On November 4, 1999, Detective Douglas Tiller of the West Metro Drug Task Force obtained a warrant authorizing the search of a residence, outbuildings, vehicles and persons for evidence relating to manufacture of methamphetamine. The affidavit in support of the warrant, sworn out by Detective Tiller, recited that defendants Richard Kazmierski and Kathy Knafla had purchased known precursors to methamphetamine, including $70 worth of pseudoephedrine, iodine crystals, and hypophosphorous over a period of five months. Defendants presented identification at these points of sale; the salespeople reported the sales and the investigators then traced the leads to a shared residence at 400 South Foote Street in Lafayette, Colorado. The affidavit also recited that the defendants drove the same black car on various occasions. The affidavit alleged that Detective Tiller observed defendant Knafla driving the car while smoking something in a clear glass pipe of a type often used for methamphetamine. The affidavit further stated that defendant Kazmierski formerly served as a Denver police officer, who was terminated from duty while a SWAT team stood by in support; and that Kazmierski had a number of arrests for assault. The affidavit also averred that Kazmierski had been arrested for marijuana cultivation at some earlier unspecified time, that he had admitted to methamphetamine use at the time of that arrest, and that officers found drug paraphernalia in the residence where marijuana was being cultivated at the time of that arrest. The affidavit did not allege that any person had witnessed the transportation of any precursor materials into the residence, or witnessed any drug related activity in the residence or in any of the outbuildings.

Once the warrant was signed, Detective Tiller undertook the search. Based on the evidence discovered during the execution of the warrant,[1] the People charged defendants with four drug counts involving methamphet-

---

1. He found approximately 18 grams of methamphetamine, drug paraphernalia and evidence of methamphetamine production.

amine.[2] Each defendant entered a not guilty plea and filed a number of motions including motions to suppress the evidence obtained in the shared residence at 400 South Foote Street. Defendants claimed in the motion to suppress that the affidavit supporting the warrant lacked probable cause, that the officer-affiant included knowingly or recklessly made falsehoods; and that the good-faith exception to the exclusionary rule should not be used to protect evidence obtained in the search.

At the hearing on the motion to suppress, the trial court focused on whether the statements in the affidavit were false and whether they would substantially mislead the judge issuing the warrant pursuant to *People v. Winden*, 689 P.2d 578, 583 (Colo.1984). Together, the defendants challenged the truthfulness of four statements in the affidavit.

The trial court found that the defendants proved by a preponderance of the evidence that three of the statements were erroneous and made with reckless disregard for the truth.[3] In accordance with the requirements set forth in *People v. Dailey*, 639 P.2d 1068, 1074 (Colo.1982), the trial judge struck the statements from the affidavit and determined that without the statements, the affidavit failed to establish probable cause authorizing a search for evidence relating to production of methamphetamine. The trial court thus suppressed all evidence obtained during the search.

## II.

We begin by restating the principle that a reviewing court, in the context of a suppression motion, defers to a trial court's findings of fact, but analyzes de novo the trial court's application of legal standards to those facts as a question of law. *People v. Rivas*, 13 P.3d 315, 320 (Colo.2000). It falls to the appellate court to shoulder responsibility to "ascertain whether the trial court's legal conclusions are supported by sufficient evidence and whether the trial court applied the correct legal standard." *People v. King*, 16 P.3d 807, 812 (Colo.2001) (citations omitted).

Here, the trial court held a veracity hearing, occasioned by the defendants' motions and affidavits. *See Winden*, 689 P.2d at 581 (setting forth requirements for a veracity hearing to comply with the Fourth Amendment of the federal constitution); *Dailey*, 639 P.2d at 1075 (allowing a defendant to make a specific, good-faith challenge to the veracity of an affidavit supporting a warrant). At that hearing, the court examined the statements challenged by the defendants to determine first their accuracy, and if false, to determine the source of the errors. *Winden*, 689 P.2d at 583. "If the source of the error is intentional falsehood or reckless disregard for the truth on the part of the officer-affiant, the statements must be stricken from the affidavit." *Dailey*, 639 P.2d at 1075. If the remaining statements fail to establish probable cause, the court must grant the motion to suppress. *Id.*

At the veracity hearing before the trial court, the defendants made the following challenges. First, the affidavit included information about defendant Kazmierski's arrest for cultivation of marijuana. Defendant Kazmierski did not dispute the accuracy of this information but argued that the information was misleading because it omitted the fact that he was ultimately convicted for possession of marijuana, not cultivation. Second, defendant Kazmierski challenged the affidavit's assertion that he had been the subject of "several arrests for assault." In fact, the trial court heard evidence that Kazmierski's record showed only one arrest for assault, which occurred some eighteen years before the warrant was executed. Third, Kazmierski challenged the affidavit's assertion that "he is a former police officer and the SWAT team was called to 'stand by' at his termination." The trial court heard no

---

2. The People charged defendants with one count each of Manufacturing a Schedule II Controlled Substance, Possession With Intent to Distribute a Schedule II Controlled Substance, Possession of a Controlled Substance, and Conspiracy to Manufacture a Schedule II Controlled Substance.

3. The trial court also found that some of the statements in the warrant were stale, "particularly those parts as to when Mr. Kazmierski had last used methamphetamine, when they had last seen drug paraphernalia at a residence or place where he was."

evidence supporting any SWAT team involvement in Kazmierski's dismissal from the police force. Finally, defendants challenged the assertion in the affidavit that Knafla purchased a total of six twelve-ounce bottles of iodine crystals from Walker Cage & Feed. The defendants produced evidence that Walker Cage & Feed only sold two-ounce bottles of iodine crystals and had never sold twelve-ounce bottles.

The trial court first found that although the affidavit failed to recount the ultimate disposition of the marijuana charge, no judge or magistrate would be substantially misled by that omission. Thus, the trial court allowed that statement to remain in the affidavit. *See Winden,* 689 P.2d at 583 (allowing the trial court discretion to determine whether an omission renders an affidavit substantially misleading). Next, the trial court applied the three-part test set forth in *People v. Dailey,* 639 P.2d at 1074–75, and concluded that the statements about the several arrests for assault, the reference to the SWAT team and the size of the iodine crystal bottles were all false. *See Dailey,* 639 P.2d at 1075 (requiring a showing that challenged statements are false). The court further determined that there was no basis for the statements and the officer's decision to include them was made with reckless disregard for the truth of the statements. The trial court thus struck the statements from the affidavit. *See id.* As to the iodine crystal bottles, the trial court struck any reference to size, but not to the purchase of iodine crystals from the affidavit, because of the officer's failure to ascertain the correct size of the bottles.

Accordingly, having stricken the false and recklessly made statements from the affidavit, the trial court proceeded to consider whether the affidavit sufficiently stated probable cause sufficient for a search, and concluded that it did not.

### III.

▮▮ The People do not challenge the trial court's findings as to the falsity and recklessness of the statements. Rather, the People contest the conclusion that absent the statements, the affidavit failed to establish probable cause. The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution protect persons from unreasonable searches and seizures and prohibit the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched and objects to be seized. *See* U.S. Const. amend. IV; Colo. Const. art. 2, § 7. To establish probable cause, the affidavit supporting the warrant must allege facts sufficient to cause "a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *People v. Quintana,* 785 P.2d 934, 937 (Colo. 1990). A probable cause determination "does not lend itself to mathematical certainties and should not be laden with hypertechnical interpretations or rigid legal rules." *People v. Altman,* 960 P.2d 1164, 1167 (Colo.1998). Rather, it focuses on whether the affidavit establishes a fair probability that officers executing the warrant will find contraband or evidence of crime at the location to be searched. *People v. Hakel,* 870 P.2d 1224, 1228 (Colo.1994).

▮▮ As a part of that inquiry, the affidavit must supply a sufficient nexus between criminal activity, the things to be seized, and the place to be searched. 2 Wayne R. La-Fave, *Search and Seizure* § 3.7(d) (3d ed.1996); *see also, King,* 16 P.3d at 813. An affidavit containing only vague allegations that the defendant engaged in illegal activity without establishing a nexus between the alleged criminal activity and place to be searched cannot establish probable cause. *People v. Randolph,* 4 P.3d 477, 482 (Colo. 2000); *see also People v. Leftwich,* 869 P.2d 1260, 1270 (Colo.1994) (holding an affidavit containing no facts that would allow a reasonable officer to conclude that probable cause existed to search a residence was deficient).

▮ A court analyzes the sufficiency of a search warrant in terms of time, crime, objects, and place. LaFave, *supra,* at § 3.7(d). In this case, as the trial court noted, the time element was not precise or current. For example, the events of purchase had occurred over a five month period prior to issuance of the warrant, which the trial court

found to raise issues of staleness. Additionally, the prior arrest and accompanying statement about methamphetamine use was not tied to any time frame at all and inferences that the affidavit drew from that event were therefore unspecific and even potentially misleading.

Two of the remaining three elements are interrelated: crime and place. The purchase or possession of precursor items was not a crime. This was not a circumstance in which the crime occurred off site, and the affidavit had merely to establish a reasonable basis for believing that evidence of the crime would be located at the home. Rather, the crime consisted of the manufacture of methamphetamine-a crime requiring a location. The probable cause to believe a crime had been or was being committed was thus inextricably tied to a location. *See Quintana*, 785 P.2d at 937 (requiring sufficient facts linking the place to be searched and contraband or criminal activity).

■ Here, not only did the investigator not see the items transported into the home, but more importantly, the investigator did not recite any other facts that would support probable cause to believe that the defendants were manufacturing methampetamine inside the home. For example, the presence of a distinctive odor (in the case of methamphetamine manufacture) or of excessive energy use (in the case of marijuana cultivation) are clearly sufficient to tie the allegations of criminal activity to a particular location. *See United States v. Mueller*, 902 F.2d 336, 339 (5th Cir.1990) (holding that affidavit stating detection of "strong chemical odor of those chemicals commonly used in the manufacture of methamphetamine" along with other statements established probable cause); *Altman*, 960 P.2d at 1171 (holding that excessive energy usage taken with hydroponic growing equipment can be inherently suspicious activities known to indicate marijuana cultivation); *Quintana*, 785 P.2d at 939–40 (finding that excessive energy usage partially supports affidavit for search warrant for marijuana cultivation). Other factual allegations would also suffice, but here, there were none.

The People claim that the affidavit here demonstrates that defendants purchased precursors to methamphetamine, that one defendant smoked methamphetamine in the automobile, that the defendants lived together, and that defendant Kazmierski was a known drug user. The People suggest that the facts set forth in the affidavit establish a fair probability of methamphetamine production at 400 South Foote despite the fact that the affidavit does not specifically document that any drugs or materials for production of drugs were seen at or in the residence. The People rely on *People v. Hakel*, 870 P.2d 1224, 1229 (Colo.1994), for the proposition that "the link between suspected criminal activity and a specific location to be searched may be established by circumstantial evidence and proper inferences drawn therefrom."

We disagree, and view this case as distinguishable from *Hakel*. In *Hakel*, police observed two cocaine sales to an informant in a hotel room but found no records of the transactions upon search of the room. *Id.* at 1226–27. Then the officer-affiant, based on his experience as an investigator of drug offenses and his participation in a prior extensive investigation of the defendant, sought an affidavit to search defendant's residence for cocaine and for business records documenting cocaine distribution, particularly the two sales observed by police. *Id.* We upheld the search despite the fact that the affidavits did not include statements that anyone had observed cocaine, paraphernalia, or records of cocaine transactions in or at the residence. *Id.* at 1229. We concluded that the officer's personal knowledge of the defendant's present and prior conduct, including defendant's history of maintaining records of drug transactions at his home sufficed to provide probable cause for the search. *Id.*

In this case, there was no such nexus. Rather, as the trial court suggested, these facts are more similar to those in *People v. Randolph*, 4 P.3d 477 (Colo.2000). In *Randolph*, we determined that an affidavit alleging in a conclusory fashion that an informant had seen methamphetamine carried into a barn near the defendant's residence; had seen an individual smoking methamphetamine in defendant's trailer; and knew defendant had sold marijuana did not suffice to

establish probable cause to search the residence. *Id.* at 482–83. The conclusory statements relating what the informant had seen provided no independent corroboration and therefore were insufficient to support a determination that drug related activities were taking place on the defendant's property. *Id.*

Similarly, here, there is nothing in the redacted affidavit to tie illegal activity to the defendants' home, other than the fact that they resided there. The information that defendants purchased precursors to methamphetamine production was, without more, an insufficient basis to search the defendants' home. When the affidavit is stripped of the challenged statements, it provides a basis to conclude only that, over a space of five months, defendants purchased pseudoephedrine, iodine crystals, and hypophosphorous acid, which can be used as methamphetamine precursors; and that defendant Knafla smoked a substance in a glass pipe while driving the vehicle. The affidavit also indicated that defendant Kazmierski had, at some unspecified earlier time, been previously arrested for marijuana cultivation, the officers discovered drug paraphernalia at the searched residence, and that he had admitted methamphetamine use. However, the trial court specifically found that those statements in the warrant were stale because they identified no timeframe, and that they lacked sufficient detail. We conclude that the redacted affidavit fails to provide a nexus between the purchase of legal ingredients that could be methamphetamine precursors and illegal activity in the defendants' home.

### IV.

 Lastly, the People argue that despite any deficiency of the warrant, the good-faith exception to the exclusionary rule should apply. The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exclusionary rule seeks to deter improper police conduct and should not be applied in cases where this deterrence purpose is not served "or where the benefits associated with the rule are minimal in comparison to the costs associated with the exclusion of probative evidence." *Altman,* 960 P.2d at 1168. The exclusion of evidence obtained pursuant to a subsequently invalidated warrant must alter the behavior of individual law enforcement officers to have any deterrent effect. *Leon,* 468 U.S. at 918, 104 S.Ct. 3405. Courts encourage officers to obtain warrants before invading individual privacy and an officer's reasonable reliance on a warrant later invalidated by a court should not be punished. *See Altman,* 960 P.2d at 1170.

 The general rule is that evidence obtained in a search by an officer acting in good faith is admissible. § 16–3–308(1), 6 C.R.S. (2000); *Leon,* 468 U.S. at 922, 104 S.Ct. 3405. Colorado has a statutory good-faith exception that creates a presumption that an officer acting pursuant to a warrant is acting in good-faith. *Altman,* 960 P.2d at 1168. However, the officer must, even when acting pursuant to and within the scope of a warrant, undertake the search with the objective, reasonable, good-faith belief that it was proper. *See Leon,* 468 U.S. at 919, 104 S.Ct. 3405. We have concluded that the objective standard set forth in *Leon* and Colorado's statutory standard are "substantially similar," *Leftwich,* 869 P.2d at 1272, and the court must inquire "whether it was objectively reasonable for the officer to rely upon the warrant." *Altman,* 960 P.2d at 1169. If no reasonable officer in the officer's position would rely on the warrant, "then the objective good faith is absent and the good-faith exception offers no shelter." *Id.*

We agree with the trial court that the affidavit submitted in support of this warrant could not support objectively reasonable reliance by Detective Tiller because it was partially based on his own recklessly made falsehoods. Moreover, we agree with the trial court's determination that Detective Tiller knew or should have known that the warrant could not support a probable cause determination. The United States Supreme Court has specifically identified certain circumstances in which an officer's reliance on a warrant would not be objectively reasonable,

to wit: (1) where the issuing magistrate or judge was misled by a knowing or recklessly made falsehood; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the warrant is so facially deficient that the officers cannot reasonably determine the particular place to be searched or things to be seized; and (4) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405. We agree with the trial court that this affidavit fits within the first exception to the exclusionary rule.

 Accordingly, we conclude that the good-faith exception to the exclusionary rule cannot protect an officer who obtains a warrant based in part on material false and reckless statements, because such a result would defeat the very purpose of the good faith rule—that of protecting officers acting in reasonable good faith.

### V.

Our review of the record supports the trial court's application of pertinent law. We agree with the trial court's finding that the redacted affidavit fails to set forth probable cause for a search warrant for evidence of drug manufacture at defendants' residence and is thus constitutionally infirm. Furthermore, we find that an officer-affiant who made false statements either intentionally or with reckless disregard for the truth cannot claim shelter under the good-faith exception to the exclusionary rule. False statements, either intentionally or recklessly made, are the antithesis of good faith. We affirm the trial court's suppression of evidence obtained during the execution of the warrant and remand the case to that court for further proceedings consistent with this opinion.

Justice COATS dissents, and Justice RICE joins in the dissent.

Justice COATS, dissenting:

Whatever the merits of the trial court's decision to strike information it considered recklessly inaccurate, in my opinion the resulting affidavit nevertheless established probable cause to believe that the defendants were illegally manufacturing methamphetamine and that items connected to their criminal activity would be discovered at the time and place for which the search was authorized. Because I would reverse the suppression order without regard to the question of good faith reliance, I respectfully dissent.

Even after challenged portions of the affidavit were excised, it still contained reliable information that the defendants, individually and together, had bought three necessary ingredients for the manufacture of methamphetamine, on at least five separate occasions, from a pharmacy, a feed store, and a chemical supply store. In June, defendant Kazmierski bought pseudoephedrine, a direct precursor to methamphetamine, from a Walgreen's drug store, in sufficient quantity to require identification, from which the police were later able to obtain his arrest record and eventually his current address. Three different times between July and October, the police were given notice that defendant Knafla purchased iodine crystals from a feed store, and when she called ahead to pick up the last of these purchases, the police were notified and were able to follow her from the store back to her residence, at the same address as defendant Kazmierski, and watch her smoke something from a small, clear glass pipe of the type often used to smoke methamphetamine. Finally, the police were notified by a DEA Agent that in August, defendant Knafla had ordered two pints of hypophosphorous acid, another necessary ingredient in the manufacture of methamphetamine, and that it was picked up by defendant Kazmierski, again identifying himself by his driver's license.

A search is an investigative tool. Although a search, and especially a search of the home, is invasive of personal privacy, in light of competing interests in public safety and the detection of crime, a search is permitted when a neutral, judicial magistrate determines that there is probable cause to believe it will result in evidence of criminal activity. Probable cause does not require the degree of proof necessary for conviction of a crime. *See People v. Washington,* 865

P.2d 145, 148 (Colo.1994). Similarly, probable cause does not require the exclusion of innocent explanations or even an inference that criminal behavior is more likely than not. *See United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) ("The fact that innocent explanation may be consistent with the facts alleged does not negate probable cause."); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* §§ 3.2(e) at 69–70 (3d ed. 1996 & Supp. 2001) ("The mere fact that 'innocent explanations for the activity may be imagined' is not enough to defeat the probable cause showing.") (citations omitted); *see also People v. Altman,* 960 P.2d 1164, 1171 (Colo.1998) ("A combination of otherwise lawful circumstances may well lead to a legitimate inference of criminal activity."). Probable cause is a flexible standard, merely insuring that there is a fair probability, based on practical, commonsense considerations, that a search will discover items connected with criminal conduct. *People v. MacCallum,* 925 P.2d 758, 762 (Colo.1996); *Banks v. People,* 696 P.2d 293, 296 (Colo.1985); *see also Dunaway v. New York,* 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

To my mind, there can be no serious question that reasonable people, after learning about the manufacture of methamphetamine, would conclude that there was a fair probability that the defendants were engaged in doing just that. I believe that common sense dictates a likelihood that the accumulation of these three separate ingredients, over a period of months, in the manner and quantities reported, was for the purpose of making methamphetamine. The ongoing purchases and the nature of the suspected criminal activity strongly suggest the need for a private location and some kind of equipment. Especially where independent evidence indicated that each defendant resided at the searched address and where one of the defendants was followed after purchasing a key ingredient, not to another location, but back to that address, I believe there was enough to infer that evidence of criminal conduct related to the manufacture of methamphetamine, whether the equipment or contraband itself, or merely evidence of further purchases of ingredients, other locations used for manufacturing or storage, or actual records or evidence of distribution or sale, would be discovered in a search of the couple's modular home. *Cf. United States v. Rambis,* 686 F.2d 620, 624 (7th Cir.1982) (reasonable to infer that assembly of arson device would require simple tools and materials found in defendant's home, especially where accomplice had purchased necessary materials just prior to stopping at defendant's home, and government agents, through surveillance, saw no indication that materials had been stored elsewhere).

It would be unrealistic and impose far too great a burden on the detection of crime to require actual first-hand observations by the police of criminal activity before permitting the search of a specific residence. *See People v. Hakel,* 870 P.2d 1224, 1229 (Colo.1994) ("However, the link between suspected criminal activity and a specific location to be searched may be established by circumstantial evidence and proper inferences drawn therefrom."). The affidavit in this case relied on information from reliable sources, including reports from commercial establishments and actual police records and surveillance, rather than uncorroborated rumors, anonymous tips, or information from criminal informants. *Cf. People v. Randolph,* 4 P.3d 477, 482, 484 (Colo.2000) (finding inadequate information from unnamed informant, with no history of providing accurate tips or sufficient details to infer personal knowledge). The police in this case did not act precipitously but systematically acquired information from a number of reliable sources, over a significant period of time, and corroborated that information through official records and other law enforcement agencies.

I would find that the search in this case did not violate the constitutional prohibition against unreasonable searches and seizures, and therefore I would reverse the district court's suppression order.

I am authorized to state that Justice RICE joins in this dissent.