**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

**v.**

**Brian Adrian GREEN, Defendant–Appellee.**

**No. 03SA5.**

Supreme Court of Colorado,
En Banc.

June 16, 2003.

Jeanne M. Smith, District Attorney, Gordon R. Denison, Deputy District Attorney, Brien D. Cecil, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Anderson & Travis, P.C., Wayne E. Anderson, Colorado Springs, Colorado, Attorneys for Defendant–Appellee.

Chief Justice MULLARKEY delivered the Opinion of the Court.

The People bring this interlocutory appeal, pursuant to C.A.R. 4.1, challenging the trial court's suppression of stolen household goods seized from the residence of the defendant,

Brian Adrian Green, pursuant to a search warrant. The trial court found that the affidavit supporting the warrant established probable cause to believe that the defendant had burglarized or attempted to burglarize several houses and had taken various household items including a rare Rolex watch. However, the court concluded that the affidavit failed to establish probable cause to search Green's apartment because it did not establish a sufficient nexus between the alleged crimes and the place to be searched.

We reverse the suppression order. The affidavit established that the owner of the stolen Rolex watch happened to see the defendant wearing the rare watch in a restaurant on the evening of the same day that it was stolen. Given that Green publicly displayed the stolen watch as his own and that the affidavit was executed on the day after the theft, facts in the affidavit and reasonable inferences from those facts created probable cause to believe that the stolen watch could be found among Green's possessions in his apartment.

## I. Facts and Proceedings Below

Because the issue before us is a narrow one limited to the nexus between the alleged crimes and the place to be searched, we need not summarize the lengthy affidavit in great detail. As the trial court concluded, there was probable cause to believe that Green committed eight acts of burglary and/or prowling between July 2001 and July 2002 at residences in the Broadmoor area of Colorado Springs.

Two incidents set forth in the affidavit involved completed burglaries. In the most recent incident, occurring just two days before the search warrant was issued, the victim reported that a rare Rolex watch had been stolen from his home. Within a few hours of the burglary, the victim saw an identical Rolex on the arm of a man in a restaurant. The victim learned the man's name from the restaurant bartender and promptly reported the sighting to the police. The Rolex Yacht–Master watch was valued

at $20,000. The owner, who was in the jewelry business, estimated that there were probably only five other watches of the same style in the Colorado Springs area.

After the warrant was issued, police officers arrested Green and subsequently searched Green's apartment, seizing several watches—including the Rolex described above—various items of jewelry, apparel, and a laptop computer.[1] Green was charged with four counts of second degree burglary, one count of attempted second degree burglary, one count of second degree criminal trespass, one count of first degree criminal trespass, and five habitual criminal counts.

Green moved to suppress the evidence found at his apartment, arguing that the affidavit did not establish probable cause to believe that evidence of criminal activity would be found at his apartment. The trial court granted the motion to suppress, finding that there was no nexus between the stolen goods and the apartment.

## II. Analysis

The trial court's basis for concluding that Officer Turner's affidavit did not establish probable cause to issue a search warrant was that the affidavit failed to present sufficient facts to establish a nexus between the criminal conduct alleged and Green's residence. Specifically, the trial court noted that no facts had been presented directly linking the stolen items to Green's residence. No one had seen the goods being taken to the apartment, and although Green had a prior criminal record, he had no past history of storing stolen property at his residence.

An affidavit need only establish "a *fair probability* that officers executing [a] warrant will find contraband or evidence of crime at the location to be searched." *People v. Kazmierski*, 25 P.3d 1207, 1211 (Colo. 2001) (citing *People v. Hakel*, 870 P.2d 1224, 1228 (Colo.1994)) (emphasis added). The link between the suspected crime and the place to be searched can be established by circumstantial evidence and reasonable infer-

---

1. The People had gained incriminating information from the laptop which was suppressed by the trial court. The People concede that they did not have probable cause to search the contents of the computer and that issue is not before us.

ences drawn from such evidence. *People v. Hakel*, 870 P.2d at 1229 (citations omitted). In other words, although direct evidence in the affidavit connecting evidence of the crime to the place to be searched is helpful in establishing probable cause, it is not necessarily required. Rather, the facts alleged in the affidavit, together with reasonable inferences drawn from those facts, may be enough.

Illustrative of this principle is this court's decision in *People v. Hebert*, 46 P.3d 473 (Colo.2002). In *Hebert*, we upheld the issuance of a warrant to search a residence for evidence related to a murder even though the victim's body was found in the trunk of her car several miles away from the residence. *Id.* at 483. Although there was no direct evidence connecting any criminal activity to the residence, we found that circumstantial information and commonsense inferences drawn from these facts were sufficient to establish probable cause to search the residence. *Id.* Specifically, the affidavit showed that 1) the victim and her husband (the defendant) both lived at the residence and that the victim was last seen alive at the residence; 2) the defendant, who normally did not drive his wife's car, had been seen backing the victim's car into the garage attached to the residence on the night before the body was found; and 3) the victim's body appeared to have been placed into her car trunk after the murder. *Id.* at 483–84. From this information, we concluded that based on "practical and commonsense conclusions about human behavior," it was reasonable to suspect that evidence of criminal activity would be found at the residence. *Id.* at 483 (citation omitted).

■ With respect to the case now before us, the information about the unusual Rolex watch connects the stolen goods to Green's residence. Here, the affidavit states that Green was seen wearing the watch openly in public on the very day that it was stolen. Specifically, the victim of the Rolex theft spotted Green wearing the watch while dining in a local restaurant on the night of the robbery. From these facts, it appears that Green was treating the stolen watch as if it were his own and would be likely to keep the watch at his residence with his other possessions. This information, coupled with the fact that the theft of the watch had occurred only one day prior to the issuance of the warrant, raises the reasonable inference that circumstances had not changed and that the watch was still under Green's immediate control.

Other jurisdictions have recognized that stolen household items often are kept in the residences of those who stole them because it is convenient and the items are easily concealed in a residential setting. *See United States v. Jackson*, 1993 WL 54202 *1, *4 (E.D.La. Feb.24, 1993) (reasonable to infer stolen jewelry would be kept at defendant's residence); *State v. Guidry*, 388 So.2d 797, 800 n. 1 (La.1980) ("it was reasonable to assume that the normal place a criminal dealing in stolen jewelry would keep such items [is] at his house"). *See also People v. Super. Ct. (Brown)* 49 Cal.App.3d 160, 167–68, 122 Cal.Rptr. 459 (Cal.App.1975) (can infer that stolen antiques and credit cards would be kept at criminal's residence); *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985) (reasonable to infer that stolen currency from robbery two months earlier would be at defendant's residence); *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir.1993) (cash is the type of stolen item likely to be kept at a secure location like one's home). Because the Rolex watch was expensive and easily stored at a residence, it is equally reasonable to infer that the watch might be found at Green's apartment.

This case is very different from other cases in which we have found an insufficient nexus between the evidence sought and the place to be searched. One example is *People v. Kazmierski*, 25 P.3d 1207 (Colo.2001), where two defendants were suspected of manufacturing methamphetamine and we upheld the trial court's order suppressing evidence seized from their home under a search warrant. The affidavit recited that the defendants had purchased several chemical precursors to methamphetamine over a five month period but contained no indications that the precursor materials had been transported to the residence or that any illegal drug activity had

occurred at the residence. *Id.* at 1209. As we explained:

> [t]he purchase or possession of precursor items was not a crime. This was not a circumstance in which the crime occurred off site, and the affidavit had merely to establish a reasonable basis for believing that evidence of the crime would be located at the home. Rather, the crime consisted of the manufacture of methamphetamine-a crime requiring a location. The probable cause to believe a crime had been or was being committed was thus inextricably tied to a location.

*Id.* at 1212 (citation omitted).

Unlike *Kazmierski,* the illegal acts in this case were completed when the items were taken from their owners. The Rolex and other stolen household items were not the equivalent of lawful chemicals that could be processed into an illegal drug. All that was necessary in this case was a place to keep the stolen goods. Under the facts alleged in the affidavit and the reasonable inferences drawn from the facts, probable cause existed to search Green's residence.

### III. Conclusion

The trial court's order suppressing the evidence seized from Green's residence was in error. The trial court's order is reversed, and the case remanded for further proceedings consistent with this opinion.