**Affirmed and Majority and Dissenting Opinions filed May 9, 2013.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-12-00285-CR

---

**WESLEY JEROME WRIGHT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1288721**

---

## MAJORITY OPINION

Appellant Wesley Jerome Wright appeals his conviction for possession of marijuana, asserting that the evidence is insufficient to support his conviction and that probable cause did not support the issuance of the search warrant that led to

the discovery of the hydroponic marijuana plants that are the basis of the charged offense. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the offense of possession of marijuana, in a quantity weighing more than five pounds and less than fifty pounds, following law enforcement officers' execution of a search warrant at a specific address in Harris County, Texas. In their search of the premises, officers recovered 155 live marijuana plants growing hydroponically inside the home along with marijuana that had been processed and dried; the total weight of the recovered contraband was just over fourteen pounds. Appellant pleaded "not guilty" to the charged offense.

Appellant filed a motion to suppress evidence, asserting that the search warrant was issued without probable cause and that any evidence recovered by the officers pursuant to the search warrant was unlawfully seized and should be suppressed for trial. Attached to the motion was the affidavit in support of probable cause for issuance of the search warrant, which appellant challenged as failing to articulate probable cause.

The evidence at trial included the testimony of Sergeant Robert Clark, a certified peace office for thirty-four years who, at the time of trial, was working on a federal narcotics task force conducting hundreds of narcotics investigations. This background equipped him with training and experience in investigations of hydroponic marijuana, which is a type of contraband typically grown inside a highly controlled environment and requires a high level of care.

Sergeant Clark initiated an investigation of an alleged "grow house" at a specific address in December 2010, after receiving an anonymous tip on the first of

2

that month, that hydroponic marijuana was being grown at that location. He drove by the location to determine whether typical indicators of a grow house were present. He observed a vehicle registered to appellant arrive at the home, but he did not see anyone exit the vehicle. At the address, he observed the windows were tightly covered; the yard was a little unkempt; and even though two vehicles were in the driveway, the home appeared vacant, all of which are typical indicators of a grow house. He traveled to the home several more times that week in a "drive-by surveillance," and on each of these occasions, he observed other indicators typical of a grow house, such as exterior lights on during the daytime hours and no vehicles on the premises. On one of these occasions, he saw another vehicle, registered to appellant, leaving the home.

Sergeant Clark learned that the home belonged to appellant's ex-wife. He executed a subpoena on Centerpoint Energy and learned that the electrical usage at the home was unusually high, substantially higher than other area homes of the same size, which indicated the possibility that the home served as a grow house. According to the record, electrical usage in the home increased significantly from March 2010 to December 2010. The record also reflects that prior to March 2010, the home's electrical usage was particularly low, which suggested that the home was vacant or that the home's electrical meter had been bypassed as is common with grow houses. The record reflects that the meter to the home had been bypassed at one time and repaired, resulting in the large usage increase in March 2010. The Centerpoint Energy account associated with the home was in appellant's name.

On December 6, 2010, Sergeant Clark initiated a "knock and talk" investigation at the home. When he arrived, he observed a vehicle registered to appellant in the driveway, the blinds to the home tightly closed, and the home's

3

exterior lights on during day-time hours. Sergeant Clark called other uniformed law enforcement officers for assistance, as well as a narcotics-detection dog. Once other officers, including Deputy James Savell, arrived on the scene, they approached the home in raid gear and prepared to raid the home. The officers knocked several times without any response. They heard music inside the home. At the front door, they detected the odor of "skunk weed," a strong-smelling type of marijuana. Once the officers detected that odor, and after knocking again at the door with no response, the narcotics-detection dog was asked to conduct an "open air sniff" of the exterior of the front door; the dog alerted to the presence of marijuana. Deputy Savell then left the premises, sought and obtained a search warrant of the home, and returned to the scene.

Armed with a search warrant, the officers again approached the home in raid gear, knocked on the door and received no response. They entered and once inside, officers detected the strong odor of marijuana and saw that a bedroom and garage had been converted to hydroponic grow rooms containing in total 155 live marijuana plants, with an estimated value of $138,000. Another room contained marijuana that already had been dried and harvested. Officers observed equipment and supplies associated with hydroponic marijuana cultivation and packaging. The rooms of the home were insulated and carefully controlled with lighting, ventilation, and temperature apparatuses. Two of appellant's separate fingerprints were identified and lifted from a metal halide light shroud in one of the growing rooms. The kitchen had no food and very few typical kitchen items. The home contained little furniture and no clothing, and appeared as if no one had lived in the home recently. There was one bed, but it did not appear as if anyone had slept there because it was covered with other items. Inside the home, officers found documents, some of which were dated over one year old, belonging to several

other individuals. According to officers who executed the search warrant, although a single person could tend to a hydroponic operation of this complex scale, that person would need to be at the home at least every one to two days.

Sergeant Clark spoke with a neighbor who lived next door, and the neighbor reported that appellant had been at the home the day before. According to the neighbor's testimony at trial, in the weeks leading up to the search of the home, the neighbor claimed to have seen appellant at the home two or three times a week on a consistent basis. The neighbor testified to seeing appellant's vehicle at the home in the week before December 6, 2010, but could not recall whether he had seen appellant. According to the neighbor, appellant, at one time, had lived in the home with his then-wife, but, after the couple divorced, the house was vacant. In 2009, the neighbor began to see appellant at the home regularly. In the interval between February 2010 and December 2010, the neighbor also saw appellant at the home. The neighbor recalled occasionally seeing at least two other people with appellant at the home—a woman and a man; the neighbor identified the man from a photo Sergeant Clark showed him. One summer, possibly in 2009, the neighbor had seen that same man with appellant rewiring the home, pulling wires from the home, connecting the wiring to a "main power center," and replacing the home's exterior electrical box. The neighbor and appellant had an agreement that the neighbor's yard crew would tend to the yard and that appellant would reimburse the neighbor for the yard crew's services. Although the neighbor knocked on the door to the home on occasion in the summer of 2010, when he believed appellant was there, no one ever answered the door. In the weeks leading up to the search on December 6, 2010, the neighbor characterized appellant and others as being "in and out" of the home "all the time," spending the night on many occasions. Although the

5

neighbor did not see appellant at the home every day, he saw appellant often enough to believe that appellant lived there.

An arrest warrant was issued for appellant's arrest one week after the officers searched the home. Appellant turned himself into authorities. The charges in the underlying case were eventually filed against him.

Pursuant to appellant's motion to suppress, the trial court initially allowed appellant a running objection to the evidence the officers recovered in a search of the home. Outside of the jury's presence, the trial court later heard the parties' arguments on appellant's motion to suppress. Appellant argued that absent the dog's alert to the contraband inside the home, the affidavit in support of the search warrant was insufficient for probable cause because the activities described were lawful activities. Appellant also asserted that, contrary to Texas law as it existed then, having the dog conduct an open-air sniff was a warrantless search without probable cause and thus was prohibited by the Fourth Amendment such that the dog's alert should not be factored into the probable-cause ruling. The trial court denied the motion to suppress, ruling that under the totality of the circumstances, including the evidence as it relates to the officers' observations, training, and experience, the search warrant was supported by probable cause.

Appellant presented evidence that beginning in February 2010, the home served as rental property and that he managed the property for his ex-wife. According to appellant's current wife, who had witnessed a lease executed on the property for that tenancy, the handwritten lease between appellant and the tenant reflects that the utilities would remain in appellant's name because the tenant had poor credit. The trial court admitted into evidence the undated lease and a copy of the tenant's Louisiana driver's license. Appellant's wife stated that she and

appellant went to the home occasionally from February 2010 through December 2010, to collect rent or to tend to the yard, but she denied that they ever went inside the home. Appellant's wife also denied that appellant ever spent the night at the home. The wife stated that she went to the residence in December 2010, to bring appellant food and that her vehicle, registered to appellant, was left overnight at the home because it would not start. On rebuttal, the State presented evidence from a detective that despite his attempts to locate the tenant by searching several databases using the tenant's name, variations of the tenant's birthdate, and a previous address from the driver's license, the detective could not verify that any person by that name existed.

The jury found appellant guilty of the charged offense. Appellant was sentenced to eight years' confinement and now appeals his conviction.

### SUFFICIENCY OF THE EVIDENCE SHOWING THAT APPELLANT POSSESSED A CONTROLLED SUBSTANCE

In his second issue, appellant challenges the sufficiency of the evidence to support a finding that he possessed the marijuana. In evaluating a sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*,

707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The Court of Criminal Appeals has determined that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Therefore, we will review the evidence under the *Jackson v. Virginia* standard as articulated in the preceding paragraph.

A person commits the felony offense of possession of marijuana if that person knowingly or intentionally possesses a usable quantity of the controlled substance weighing more than five pounds and less than fifty pounds. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(4) (West 2010). "Possession" is defined as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West 2011); Tex. Health & Safety Code Ann. § 481.002(38) (West 2010). To prove unlawful possession of a controlled substance, the State must establish that (1) the accused exercised care, control, or management over the contraband, and (2) knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The elements of possession may be proven through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the substance was more than fortuitous. *Id.* at 405–06. When the accused is not in exclusive possession of the place where the contraband is found, the State must show additional affirmative

8

links between the accused and the contraband. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *See id.* Courts have identified the following factors that may help to show an accused's affirmative links to a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n. 12 (Tex. Crim. App. 2006). Additionally, a large quantity of contraband may be a factor affirmatively linking appellant to the contraband. *See Olivarez*, 171 S.W.3d at 292. No set formula necessitates a finding of an affirmative link sufficient to support an inference of knowing possession; affirmative links are established by the totality of the circumstances. *See Hyett*, 58 S.W.3d at 830. The number of factors present is not as important as the logical force the factors create to prove the accused knowingly possessed the controlled substance. *Robertson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Although appellant asserts that only one of these factors exists, we conclude the

record contains sufficient evidence to affirmatively link appellant to the narcotics in the home.

The record reflects that the type of complex and large-scale hydroponic operation found inside the home required a high degree of maintenance that included tending to the operation every day or every other day. Although the record reflects that appellant's ex-wife owned the home, a neighbor saw appellant at the home on a consistent basis several times a week. The neighbor estimated that appellant was there two or three times a week in the weeks before officers searched the home. According to the neighbor, appellant always entered the home upon his arrival and often spent the night there. Even though the neighbor did not see appellant at the home every day, the neighbor believed appellant lived there. The neighbor testified that in the week before the search warrant was executed on the home, he saw appellant's vehicle at the home and told investigating officers that he had last seen appellant at the home on the day before the officers searched the home. The neighbor estimated that between February 2010 and December 2010, he had seen appellant at the residence seventy-five to one hundred times. The neighbor also recalled seeing appellant and another man rewire the home and change the exterior electrical box. The record reflects that the electrical account for the home's address remained in appellant's name; it is undisputed that appellant paid this utility bill. *See Poindexter v. State*, 153 S.W.3d 402, 411 (Tex. Crim. App. 2005) (providing that with a utility bill for a house addressed to the defendant at the home, among other things, a fact finder could conclude that the defendant lived at a house). These factors support an inference that appellant had a right of possession to or control over the place where contraband was found. *See Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App.—San Antonio 2006, pet. ref'd) (concluding that defendant had right of possession to girlfriend's home,

10

where contraband was found, when affirmative links showed that defendant had a key, often stayed the night at the home, paid bills associated with the home, and utility bill in defendant's name was found at the house). Although appellant's current wife offered testimony contrary to the neighbor's, the jury was free to disregard the wife's testimony as not credible. *See Fuentes*, 991 S.W.2d at 271 (providing that a trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence); *Sharp*, 707 S.W.2d at 614 (providing that a factfinder may choose to believe or disbelieve any portion of the witnesses' testimony). To the extent appellant suggests that the contraband belonged to a tenant who lived in the apartment, control over contraband need not be exclusive, but can be jointly exercised by more than one person. *See Poindexter*, 153 S.W.3d at 412.

Two rooms of the home were dedicated to cultivating hydroponic marijuana and another room was devoted to harvesting and drying the contraband. The evidence showed a large quantity of live plants were recovered, which, along with the harvested contraband in another room, amounted to over fourteen pounds of a usable quantity of marijuana. This contraband was in plain view in the home and readily accessible to appellant; officers testified to the strong odor of the marijuana both inside and from outside the home. These facts amply support a conclusion that when appellant was inside the home, he possessed the narcotics and knew it to be contraband. *See Herrera v. State*, 561 S.W.2d 175, 179 (Tex. Crim. App. 1978) (considering as affirmative links two marijuana plants growing in an apartment along with marijuana seeds, "roaches," and loose marijuana in plain view in the kitchen and bedroom as being sufficient to show that the defendant who possessed the marijuana knew it was contraband); *Gregory v. State*, 159 S.W.3d 254, 260 (Tex. App.—Beaumont 2005, pet. ref'd) (considering as affirmative links large

11

quantity of contraband in plain view in a home, conveniently accessible to a defendant, the odor of contraband and paraphernalia were present, and place where contraband was found was enclosed). Other items recovered by the officers during a search of the home include potting soil and lighting, ventilation, and temperature equipment. *See Gregory*, 159 S.W.3d at 260 (considering as an affirmative link paraphernalia found). Officers also discovered two of appellant's fingerprints inside the home on lighting equipment found in one of the rooms devoted to hydroponic cultivation. The presence of appellant's fingerprints on the marijuana-growing equipment is a factor for consideration in showing control of the contraband and within the jury's province to resolve. *See id.* at 260–61.

Appellant asserts that no evidence linked him to the inside of the residence within ninety days prior to the officers' search. Appellant points to testimony that hydroponic cultivation of marijuana has a ninety-day growing cycle and that some of the plants were newly grown and other plants were just recently harvested. The neighbor testified that he observed appellant at the home in the week before the search warrant was executed and regularly saw appellant several times a week in the weeks leading up to the search. Likewise, the neighbor testified that he consistently witnessed appellant physically enter the home after arriving at the property. The fact that appellant's fingerprints were found on one of the lights associated with the hydroponic growing operation confirms the neighbor's testimony that appellant was inside the home during the relevant time period.

Viewing the evidence in the light most favorable to the verdict, a trier of fact reasonably could have determined beyond a reasonable doubt that the home and contraband recovered from it were within appellant's actual custody, control, care, or management and that appellant knew the substance was contraband. *See Hargrove*, 211 S.W.3d at 386 (concluding that a defendant had possession of

12

girlfriend's home when evidence showed he paid bills there, had utility bills associated with the home in his name, often spent the night, and had a key to the home); *Gregory*, 159 S.W.3d at 260 (concluding that odor and large quantity of contraband in plain view in an enclosed place, along with an accused's fingerprints associated with the contraband were sufficient affirmative links to establish possession). We overrule appellant's second issue.

## SUFFICIENCY OF PROBABLE CAUSE TO SUPPORT THE SEARCH WARRANT

In his first issue, appellant asserts that the law enforcement officers lacked probable cause to secure the search warrant that led to the discovery of the hydroponic marijuana plants. Under this issue, appellant argues (1) Sergeant Clark lacked probable cause to conduct a "knock and talk" investigation; and (2) though the alert of a trained and certified narcotics-detection dog provides probable cause for the issuance of a search warrant, this court cannot consider the statements in the affidavit regarding the narcotics-detection dog because the officers lacked reasonable suspicion that drugs or contraband were at the location before using the narcotics-detection dog, and without the alert by the narcotics-detection dog, the affidavit does not show probable cause for issuing a search warrant.

In his opening brief, appellant did not assert that the sniff by the narcotics-detection dog constituted a search or that the officers were required to have probable cause or obtain a warrant before using the dog at the home. Appellant did not cite the Florida Supreme Court's opinion in *Jardines v. State*, 73 So.3d 34 (Fla. 2011), *aff'd sub nom., Florida v. Jardines*, — U.S. —, — S. Ct. —, — L. Ed. 2d —, No. 11-564, 2013 WL 1196577, at *4 (Mar. 26, 2013), which was pending in the United States Supreme Court when briefs were submitted in the case under review. The State, in its brief, pointed out that, in the trial court (1) appellant had relied upon *Jardines v. State*; (2) appellant had argued that the use of the narcotics-

detection dog itself was an impermissible search; and (3) appellant had asserted that probable cause was required before the officers could use a narcotics-detection dog. The State asserted that, though appellant had made these arguments in the trial court, appellant was not making these arguments on appeal. In his reply brief, appellant stated that "[a]s correctly pointed out by the State, appellant's trial counsel raised the *Jardines* issue at the trial level but it was not raised in appellant's original brief." Appellant explained that he "did not present the *Jardines* issue in his original brief because, at best, a ruling by the Florida Supreme Court is only persuasive authority in the State of Texas." Nonetheless, appellant stated that this court "could independently turn to the *Jardines* decision for guidance in this or any other 'dog sniff' case." Appellant stated that "since the State has elected to put the *Jardines* issue before this Court—whether a 'dog sniff' itself is a search requiring a warrant supported by probable cause—appellant suggests that the Court address this specific constitutional issue, or, at a minimum, hold the issue in abeyance . . . until the U.S. Supreme Court resolves the issue." Even after the State pointed out appellant's failure to assert his trial-court arguments on appeal, appellant did not assert or argue in his reply brief that the use of the narcotics-detection dog itself was an impermissible search or that probable cause was required before the officers could use a narcotics-detection dog.

To preserve error for appellate review, the complaining party generally must have raised his complaint in the form of an objection, request, or motion in the trial court and obtained a ruling. *See* Tex. R. App. P. 33.1(a); *Davis v. State*, 22 S.W.3d 8, 11 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Additionally, the legal theory that appellant asserts on appeal must correspond to a theory that appellant asserted in the trial court. *See Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990), *overruled on other grounds by*, *Heitman v. State*, 815 S.W.2d 681, 685

14

n.6 (Tex. Crim. App. 1991); *Davis*, 22 S.W.3d at 11.  Appellant cannot show error in the trial court's denial of his motion to suppress based on a legal theory that appellant did not assert in the trial court.  *See Johnson*, 803 S.W.2d at 292; *Davis*, 22 S.W.3d at 11.

On appeal, appellant argues that (1) Sergeant Clark lacked probable cause to conduct a "knock and talk" investigation; and (2) this court cannot consider the statements in the affidavit regarding the narcotics-detection dog because the officers lacked reasonable suspicion that drugs or contraband were at the location before using the narcotics-detection dog, and without the alert by the narcotics-detection dog, the affidavit does not show probable cause for issuing a search warrant.  But, appellant did not assert these arguments in the trial court and thus failed to preserve error as to these complaints.[1]  *See Johnson*, 803 S.W.2d at 292; *Davis*, 22 S.W.3d at 10–11; *Fontenot v. State*, 903 S.W.2d 413, 416 (Tex. App.— Houston [1st Dist.] 1995, pet. ref'd).

On appeal, appellant has not asserted his trial-court arguments that the use of the narcotics-detection dog itself was an impermissible search or that probable cause was required before the officers could use the dog.  Thus, these arguments are not before this court. *See Davis*, 22 S.W.3d at 10–11; *Fontenot*, 903 S.W.2d at 416.

In any event, even if appellant had made these arguments on appeal, we would conclude that they do not show that the trial court erred in denying appellant's motion to suppress.  The information in the affidavit other than the

---

[1] Even if appellant had preserved error in the trial court, these two complaints lack merit.  *See State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).

15

statements regarding the narcotics-detection dog was acquired independently from the use of the dog and in a lawful manner. Thus, even if the use of the narcotics-detection dog were an unreasonable search that violated the United States Constitution, the search warrant would not be rendered invalid if, putting aside the statements in the affidavit regarding the dog, the remaining information in the affidavit clearly established probable cause. *See United States v. Karo*, 468 U.S. 705, 720–21, 104 S. Ct. 3296, 3306, 82 L. Ed. 2d 530 (1984); *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991), *overruled on other grounds by*, *Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005); *Romo v. State*, 315 S.W.3d 565, 571 (Tex. App.—Fort Worth 2010, pet ref'd) (providing that unconstitutional portions of a search warrant do not invalidate entire warrant and that only the evidence gathered pursuant to the offending portions of a search warrant is tainted); *State v. Bridges*, 977 S.W.2d 628, 632 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

The remaining information in the affidavit reflects that (1) information from a credible and reliable source indicated the electrical power meter at the home had been bypassed and altered to display a lower usage reading; (2) Sergeant Clark knows, via training and experience in investigating indoor hydroponic marijuana-growing operations that electrical meters are often bypassed to avoid detection; (3) information from a credible and reliable source further indicated that Centerpoint Energy Company fixed the meter in February 2010; (4) once the meter was repaired the power usage sharply increased to rates roughly five times that of adjacent houses of similar size; (5) every window in the residence had mini-blinds that were tightly shut, which was known to Deputy Savell to be a common characteristic of marijuana grow houses; (6) area residents reported that individuals were only at the house on a sporadic basis, which was known by Deputy Savell to

be a common characteristic of marijuana grow houses; (7) a vehicle registered to appellant was observed at the residence; and (8) appellant has a prior arrest and conviction for narcotics distribution. Even if the use of the narcotics-detection dog were an unreasonable search that violated the United States Constitution, we would conclude that under the totality of circumstances the remaining information in the affidavit would clearly establish probable cause that contraband or evidence of a crime would be found at the described location.[2] *See Bonds v. State*, No. PD-0039-12, —S.W.3d—,—, 2013 WL 1136522, at \*4–5 (Tex. Crim. App. Mar. 20, 2013);

---

[2] Courts in jurisdictions throughout the United States have found that high electrical consumption combined with other facts is sufficient to show probable cause supporting the issuance of a warrant to search a house for marijuana. *See United States v. Gumula*, No. 1:11CR105, 2012 WL 4753290, at \*3–4 (W.D. N.C. Oct. 4, 2012) (concluding that affidavit showed probable cause that marijuana would be found in the house based upon electrical usage five times higher than other houses, which the officer stated was consistent with indoor marijuana cultivation, closed window blinds, an unkempt yard, and the presence of a car belonging to a woman with a previous history of marijuana cultivation); *People v. Kazmierski*, 25 P.3d 1207, 1212 (Colo. 2001) (noting that excessive energy use in the case of marijuana cultivation is sufficient to tie the allegations of criminal activity to a particular location); *People v. Quintana*, 785 P.2d 934, 939–40 (Colo. 1990) (concluding that affidavit was sufficient based on the following facts: an informant's disclosures verified by investigative police work; the defendant occupied the premises; the defendant owned a vehicle parked in front of the residence; and electrical usage that exceeded the use by two to three times the use of the preceding nine months, and the presence of vehicle owned by defendant in front of the residence); *People v. Dunkin*, 888 P.2d 305, 309 (Colo. App. 1994) (holding that daily one-hour visits to house with no apparent residents, covered windows, high electrical consumption and officer's opinion supported probable cause); *People v. Wilson*, 819 P.2d 510, 515 (Colo. App. 1991) (holding that high electrical consumption, frequent visits to and from office, condensation on covered windows and officer's opinion constituted probable cause); *State v. Miller*, 815 S.W.2d 28, 31 (Mo. Ct. App. 1991) (concluding affidavit was sufficient based, in part, on high electrical usage); *State v. Gray*, 38 P.3d 775, 779 (Mont. 2001) (concluding that affidavit was supported by probable cause when it included the accused's criminal history involving narcotics, the fact that the home had new air vents which was consistent with ventilation requirements for a grow operation, and utility records reflected an unusual surge in power usage compared to the previous four months); *State v. Olson*, 869 P.2d 110, 114–15 (Wash. Ct. App. 1994) (concluding that independent police investigation, discovering increased power usage, corroborated informant's tip to the extent that probable cause existed in affidavit to support the search warrant).

*Flores v. State*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010); *Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006); *Massey v. State*, 933 S.W.3d 141, 148–49 (Tex. Crim. App. 1996); *Janecka v. State*, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987).  Thus, the search warrant still would be valid and the trial court would not have erred in denying the motion to suppress.  *See Karo*, 468 U.S. at 720–21, 104 S. Ct. at 3306; *Castillo*, 818 S.W.2d at 805; *Bridges*, 977 S.W.2d at 632.

For the foregoing reasons, we conclude that the trial court did not err in denying appellant's motion to suppress, and we overrule appellant's first issue.

The trial court's judgment is affirmed.


/s/     Kem Thompson Frost
        Justice


Panel consists of Justices Frost, Christopher, and Jamison. (Christopher, J., dissenting).

Publish — TEX. R. APP. P. 47.2(b).