**Leroy Ernest GREGORY, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–04–132–CR.**

Court of Appeals of Texas, Beaumont.

Submitted Jan. 26, 2005.

Decided March 2, 2005.

Dexter M. Patterson, The Woodlands, for appellant.

Michael A. McDougal, Dist. Atty., Michael Tiffin, Patty Maginnis, Michael C. Young, Asst. Dist. Atty's, Conroe, for state.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

A jury convicted Leroy Ernest Gregory, Jr. of possession of a controlled substance, methamphetamine, and possession of an immediate precursor, pseudoephedrine, with intent to unlawfully manufacture methamphetamine. Gregory pleaded true to two enhancement paragraphs. The trial court found both enhancement paragraphs true and on each count sentenced Gregory to imprisonment for life in the Texas Department of Criminal Justice, Institutional Division, the sentences to be served concurrently.

Gregory appeals raising three points of error. In his first two points, Gregory claims the evidence is legally and factually insufficient to support his conviction on both counts of possession. We first note that Gregory was charged in a single indictment along with Clyde Dorsey, Jr., Robby Dale Hon, and Cody Hamilton. Gregory was tried separately and a parties charge was given to the jury. The thrust of Gregory's argument is that the State failed to meet its burden to establish he, as opposed to his co-defendants, was in possession of either methamphetamine or pseudoephedrine.

■ Possession is defined as "actual care, custody, control or management." Tex. Pen.Code Ann. § 1.07(a)(39) (Vernon Supp.2005). To meet its burden, the State must establish Gregory exercised actual care, control and management over the contraband and had knowledge the substance in his possession was contraband. *See King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995)(citing *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988)).

Sergeant Larry Bonds testified that he, along with Deputy Mike White, Deputy Ray Zavadil and Deputy Chilcutt, proceeded to a residence to serve a felony warrant on Hamilton. Present at the residence were Gregory, Dorsey, Hon, and Hamilton. Dorsey, the property owner, gave Bonds permission to enter. Upon entering the residence, Bonds noticed there was "no lighting in the house at all" and smelled an unfamiliar odor. He further observed Gregory laying on the couch to the left of the front door. Hamilton was found in a corner in the right-hand back room. After finding Hamilton, the officers brought everyone outside.

Upon Dorsey's request, Deputy Zavadil escorted him inside the residence to the right-hand back room to retrieve his glasses. In plain view, Deputy Zavadil found what appeared to be a marijuana cigarette, a mirror with a white powdery substance and a razor blade laying on it, pipes, such as are used to smoke marijuana, and hypodermic syringes. Zavadil also found what he recognized as marijuana and a device used to roll cigarettes in a can at the edge of the bed. While searching for other occupants in the remaining rooms, Zavadil found more syringes laying around and a planter with a fluorescent light on it and marijuana plants growing in it. Zavadil also saw a clear bottle sitting on the floor. It had a separated liquid in it which Zavadil recognized as a possible by-product of a methamphetamine lab. Zavadil further noted a chemical smell in the house. The Special Investigative Unit (SIU) for the Drug Task Force was called to process the scene. Bonds testified the reason for calling SIU was the odor that was later clarified as methamphetamine.

In the immediate area outside the residence was a burn pile that had several empty blister packs of cold medication in various stages of incineration. Officers also found a well-traveled path to a small pup tent. Zavadil noted a chemical smell in the tent and a five-gallon bucket with two-liter plastic bottles containing a clear liquid.

Philip Cash, a detective with the Montgomery County Sheriff's Department, SIU, testified there was a clandestine methamphetamine laboratory at the residence. He described it as a red phosphorous, iodine, pseudoephedrine reduction laboratory. Cash testified everything needed to manufacture methamphetamine was present. The laboratory appeared to have been functioning and some of the components had been boxed, indicating an operation had occurred there. Cash found Ziploc bags containing a powdery substance. He testified the bags are used in the trafficking end; the drugs are pre-weighed and put in Ziploc bags for sale and distribution. A plastic-like tote box containing hose, gallon-size solvent cans, sports bottles that had substances in them, and plastic hose stained from use, was found in the living room, where Gregory was found. The kitchen area opened up into the living room. In the kitchen, Red Devil lye and sodium hydroxide were sitting on the stove, along with a sports bottle containing a blue-colored liquid (a solvent of some type). Cash testified it was unusual to see a solvent in such a location because it is very flammable. There was also small Pyrex glassware, which is preferred because it holds heat in the microwave. Cash testified,

> The cooking process was not going on at the time like when they boil it in the flask, but the plastic bottles had solvents in them, and the liquids had separation. We also had plastic bottles that had the pseudoephedrine, and when they took the separation of the pseudo from the pills, the binder was still in the bottles. They had the seal taped on there where they poured the solvent out and left the binder in the bottle which was an indication that it had occurred. But the actual steps they were in, I couldn't tell you what process other than I know the actual cooking process had been done.

Cash could not say when the cooking process took place. Cash testified there were items containing pseudoephedrine recovered at the scene.

A latent print was obtained from a quart-sized Coca–Cola bottle found on the floor of the back bedroom on the left side of the house. That print was matched to the ring finger on Gregory's right hand

and the substance in the bottle tested positive for ephedrine.

Cash testified he was given drivers' licenses when he arrived at the scene. Gregory's license was admitted into evidence as State's Exhibit 19. The address on Gregory's license is directly across the street from Dorsey's residence. Cash testified it was common for people involved in this activity to have or use different identifications. State's Exhibit 30 was then admitted into evidence over Gregory's objection. It is a Texas Driver's license with the name of Manuel A. Rodriquez and a Houston address. Both State's Exhibit 19 and 30 have Gregory's photograph.

Detective Robert Clark was called to the residence to investigate a possible clandestine methamphetamine lab. Clark videotaped the location. Clark found a burn pile and testified they typically encounter clandestine methamphetamine labs where they attempt to destroy evidence by burning it. Usually, they find pseudoephedrine packages, blister packages, empty fuel cans, and things of that nature. The camp site was found by following the path to the woods behind the residence. There was a two-liter soda bottle with some type of solvent in it, possibly containing methamphetamine or another step in the cooking process. Clark testified it was common for soda bottles to be used in manufacturing methamphetamine. According to Clark, items removed from the camp site, such as coffee filters, solvents, and red phosphorous, are commonly used in manufacturing methamphetamine. Clark identified a crystal white powder as either processed pseudoephedrine or ephedrine, or finished methamphetamine. Inside the residence, Clark found Red Devil lye, a drain cleaner used to balance the pH when manufacturing methamphetamine. A "box lab," a common way to transport a lab, was found on the floor. Empty pseudoephed-rine boxes and blister packs, which Clark identified as the precursor for manufacturing methamphetamine, were found in greater quantity than would be consistent with personal consumption. Sergeant David Holden testified crushed pseudoephedrine tablets were found at the scene. Clark found a soda bottle, commonly used as a reaction vessel to separate solutions. He also testified pseudoephedrine is processed to separate the ephedrine. A triple-beam scale was found. There were cases of matches, commonly found in methamphetamine labs utilizing red phosphorous to manufacture methamphetamine. Clark testified a large quantity of matches are required to obtain the necessary amount of red phosphorous.

Minh Nguyen, a chemist for the Department of Public Safety Crime Lab in Houston, Texas, performed an analysis of 95 percent of the exhibits submitted to him, the remaining samples only had a trace amount. The samples were positive for methamphetamine (959.07 grams), iodine (19.19 grams), and ephedrine (905.09 grams). Nguyen testified that while pseudoephedrine was found in some of the methamphetamine samples, all of the exhibits contained either pseudoephedrine or methamphetamine.

■■■■ Because Gregory was not in exclusive possession of the place where the contraband was found, it cannot be concluded he had knowledge or control over the contraband unless there are additional independent facts and circumstances affirmatively linking him to the contraband. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App.1995). Evidence affirmatively linking the accused to the contraband will suffice for proof that he possessed it knowingly. *See Wootton v. State*, 132 S.W.3d 80, 86–87 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd).

This Court has recognized the following as factors tending to establish affirmative links:

(1) the contraband was in plain view;

(2) the accused was the owner of the premises in which the contraband was found;

(3) the contraband was conveniently accessible to the accused;

(4) the contraband was found in close proximity to the accused;

(5) a strong residual odor of the contraband was present;

(6) paraphernalia to use the contraband was in view or found near the accused;

(7) the physical condition of the accused indicated recent consumption of the contraband in question;

(8) conduct by the accused indicated a consciousness of guilt;

(9) the accused had a special connection to the contraband;

(10) the place where the contraband was found was enclosed;

(11) the occupants of the premises gave conflicting statements about relevant matters; and

(12) affirmative statements connect the accused to the contraband.

*Nixon v. State,* 928 S.W.2d 212, 215 (Tex. App.-Beaumont 1996, no pet.). *See also Watson v. State,* 861 S.W.2d 410, 414–15 (Tex.App.-Beaumont 1993, pet. ref'd). Another factor is the amount of drugs found. *See Porter v. State,* 873 S.W.2d 729, 733 (Tex.App.-Dallas 1994, pet. ref'd). "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). Although the evidence used to satisfy these elements may be direct or circumstantial, the State must establish the accused's connection with the controlled substance and/or contraband was more than just fortuitous. *See Wootton,* 132 S.W.3d at 86–87 (citing *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995)). "Mere presence at a place where contraband is being used or possessed does not justify a finding of joint possession. *Nunn v. State,* 640 S.W.2d 304, 305 (Tex.Crim.App.1982)." *Wootton,* 132 S.W.3d at 87. The State's evidence must show facts and circumstances that, viewed in the totality of the circumstances, indicate the defendant's knowledge and control over the drugs, but the evidence need not be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. *See Brown,* 911 S.W.2d at 748; *Hyett v. State,* 58 S.W.3d 826, 830 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd).

The evidence affirmatively linking Gregory to the contraband showed the contraband was in plain view, conveniently accessible to and in close proximity to the accused, an odor of contraband and paraphernalia to use the contraband were present, the place where the contraband was found was enclosed, and the amount of contraband was large. The bottle with Gregory's fingerprint was located inside the residence, an area not generally accessible to the public, and contained a precursor. After reviewing all of the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *See Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003). Point of error two is overruled.

In evaluating Gregory's factual-sufficiency challenge, we discuss the evidence he claims is most important in allegedly undermining the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). Gregory points to the fact the soda

261

bottle with his fingerprint on it was found in another room and there was no evidence as to when the print was left on the bottle. While it is certainly possible Gregory possessed the bottle before it contained ephedrine, it was within the province of the jury to resolve such theories. Additionally, Gregory notes that Ngyuen testified the soda bottle with his fingerprint on it contained ephedrine, rather than pseudoephedrine. Gregory complains there was no evidence presented as to where the packages of pseudoephedrine and the crushed pseudoephedrine were recovered and no attempt was made to link them to him. The bottle with Gregory's print on it contained the precursor ephedrine. In addition to that present at the scene, all the evidence suggests the ephedrine came from a substantial quantity of pseudoephedrine that had already been processed. Gregory also points out that three deputies entered the room he was in and made no discovery of drugs, drug paraphernalia, or the lab box. The record reflects both Bonds and Zavadil testified as to how dark it was inside the residence. Zavadil testified the back room was lit from sunlight, otherwise it was "very dark." Further, Bonds testified he did not search the house but instead, called the Special Investigation Unit and simply awaited their arrival to process the scene. Upon considering all the evidence in a neutral light, we find the evidence supporting the verdict is not too weak to support the jury's finding of guilty beyond a reasonable doubt. *See Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). Further, the evidence contrary to the verdict is not so strong that the beyond-a-reasonable-doubt standard could not have been met. Accordingly, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 485. Point of error one is overruled.

Point of error three argues the trial court erred in admitting the altered driver's license into evidence. The decision to admit or exclude evidence is a matter within the discretion of the trial court. *See Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). The trial court is given wide latitude to admit or exclude evidence of extraneous misconduct. *See Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App. 1990). So long as the trial court operates within the boundaries of its discretion, an appellate court should not disturb its ruling, whatever it may be. *Id.* The trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or acts without reference to any guiding principles. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

Defense counsel objected to the evidence on the grounds of relevance and that it was more prejudicial than probative. *See* Tex.R. Evid. 402, 403. Counsel also noted that possession of a forged government document is an extraneous offense. *See* Tex.R. Evid. 404(b).

According to Cash, it is common for people involved in manufacturing methamphetamine to use false identification, for renting hotel rooms or buying certain chemicals. In his brief, Gregory argues there was no evidence he had used it for that purpose. We agree, but that is not the issue. There was evidence Gregory possessed an altered license, and that evidence was admissible to demonstrate Gregory's involvement in the clandestine laboratory, *viz* intent, preparation, plan, and knowledge, as well as absence of mistake or accident. *See* Tex.R. Evid. 404(b). Therefore it was relevant. *See* Tex.R. Evid. 401, 402. In light of the offense charged and the evidence adduced at trial, we cannot say the evidence Gregory possessed a bogus license unfairly prejudiced

the jury or confused the issues. Accordingly, we find the trial court did not abuse its discretion in admitting the evidence. *See Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App.2001).

 Gregory further asserts the trial court erred in overruling counsel's request for a limiting instruction at the time the evidence was admitted. In accordance with *Jones v. State,* 944 S.W.2d 642, 653–54 (Tex.Crim.App.1996), we conclude the trial court erred in failing to grant counsel's request for a limiting instruction at the time the evidence was introduced. The error, however, is non-constitutional. *See Jones v. State,* 119 S.W.3d 412, 423–24 (Tex.App.-Fort Worth 2003, no pet.); *Lemmons v. State,* 75 S.W.3d 513, 524–25 (Tex.App.-San Antonio 2002, pet. ref'd). A non-constitutional error is harmless unless a substantial right is affected. *See Lemmons,* 75 S.W.3d at 524–25; Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *See Rankin v. State,* 995 S.W.2d 210, 215 (Tex.App.-Houston [14th Dist] 1999, pet. ref'd). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect." *Lemmons,* 75 S.W.3d at 524–25.

Gregory alleges on appeal this error harmed him because the jury probably considered it evidence that he had altered the license for the purpose of possessing and manufacturing drugs. Gregory received a limiting instruction in the charge, reducing the risk the jury might misuse the evidence during deliberations. *Jones,* 944 S.W.2d at 654. There was a relatively short interval between admission of the evidence and the trial court's reading of limiting instructions in the court's charge.

*See Lemmons,* 75 S.W.3d at 525. Furthermore, as noted above, the extent of other evidence introduced outweighed any possible prejudicial effect. The extraneous offense was not more heinous or inflammatory than the charged offense, minimizing its prejudicial effect even in the absence of a contemporaneous limiting instruction. *See Jones,* 944 S.W.2d at 654. For these reasons, we conclude the trial court's error in overruling counsel's request for a contemporaneous limiting instruction did not affect a substantial right and therefore must be disregarded. *See* TEX. R. APP. P. 44.2(b). Point of error three is overruled.

The judgment of the trial court is AFFIRMED.