# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00193-CR

**Elvin Mitchell Armstrong, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC 06 205708, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial ending March 5, 2007, Elvin Mitchell Armstrong was convicted of possessing cocaine in an amount greater than four grams but less than 200 grams, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d) (West 2003). The indictment alleged that Armstrong had four previous felony convictions for the offense of possession of a controlled substance. At the sentencing hearing, the trial court found the enhancement allegations to be true and sentenced Armstrong to twenty-five years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.32(a), .42(b) (West Supp. 2007). In two points of error, Armstrong challenges the legal and factual sufficiency of the evidence, arguing that it failed to establish that he knowingly exercised actual care, control, or custody over the cocaine found in his vehicle. We overrule both points of error and affirm the judgment of conviction.

## BACKGROUND

At around 2 a.m. on the morning of October 11, 2006, Officer Scott Lando of the Austin Police Department was on patrol in northeast Austin. After observing a black Volkswagon Jetta disregard a stop sign while driving without its headlights on, Officer Lando initiated a traffic stop. The driver of the Jetta did not immediately pull over but continued driving until, after twenty or thirty seconds, he parked the car outside a nearby motel. Armstrong emerged from the driver's seat and began to walk away "at a normal pace," as did his passenger, a man initially identified as "Johnson." Officer Lando ordered the men to stop, and as they complied and returned to the vehicle, Officer Lando noticed that Johnson was "palming" an item in his hand.

At that time, backup officers Gregory Cortez and Brett Tableriou arrived on the scene and began questioning Armstrong and Johnson while Officer Lando checked Armstrong's driver's license and vehicle information. Officer Cortez, who was positioned next to the driver's side door, pulled Armstrong from the car in order to conduct a protective frisk. Meanwhile, from his position beside the passenger door of the Jetta, Officer Tableriou smelled the odor of burnt marihuana and observed a marihuana cigarette in the ashtray. He also detected "a strong residual smell" of marihuana "both in the vehicle and on the persons" of Armstrong and Johnson. When Officer Tableriou ordered Johnson to exit the vehicle, he noticed that Johnson kept his right fist balled up and that white powder was "coming out between [Johnson's] fingers." Johnson refused to relinquish the item in his hand or exit the vehicle, and a struggle ensued between him and Officer Tableriou.

In order to assist Officer Tableriou in extracting Johnson from the vehicle, Officer Cortez detained Armstrong by placing him in handcuffs and sitting him on the ground. Then, as a

2

result of the efforts of all three officers, Johnson was forcibly removed from the passenger seat, tased in the leg, and taken into custody. The item in Johnson's hand was recovered and found to be a plastic bag containing cocaine in rock and powder form. Johnson was also in possession of over four hundred dollars in cash, and after being taken into custody, he admitted to the police that he had given them a fake name.[1]

After the altercation with Johnson, the officers placed Armstrong in the back of a patrol car so that they could secure the scene, but Armstrong was not told that he was under arrest at that time. While detained in the patrol car, Armstrong called Officer Tableriou over to him and stated that there was a blue bag in the trunk of his car belonging to Johnson. He specifically denied owning the bag, and he told Officer Tableriou that he should wait before going to the trunk and investigating the bag because doing so would raise Johnson's suspicions. Officers discovered that the bag contained "a glass Pyrex measuring cup with residue, blister packs of pain reliever medication, and a large box of baking soda," items that are used in the manufacture of crack cocaine. The bag and its contents were the only items found in the car that Armstrong explicitly disowned.

During a search of the interior of the Jetta, the officers recovered a plastic bag from the center console that contained 2.3 grams of powdered cocaine. Soon afterward, the tow-truck driver who had arrived to impound the Jetta pointed out a "silver cylinder" that was also in the center console. Officer Lando opened the cylinder and found that it contained 4.1 grams of crack cocaine.

---

[1] The passenger's name is apparently Norris Michael, but we will continue to refer to him as "Johnson" for the sake of clarity.

Armstrong, as the owner and driver of the Jetta, was charged with possessing all of the drugs found in the center console.

At trial, the State called Mary Nell Villarreal, a forensic chemist with the Austin Police Department, who testified to the type and the amount of drugs found in Armstrong's vehicle, as well as Officers Lando, Cortez, and Tableriou to testify regarding the events surrounding Armstrong's arrest. Officer Lando testified that Armstrong and Johnson's behavior when he attempted to pull them over was "suspicious," particularly in light of the fact that he encountered the men in "a very high narcotics area" at two o'clock in the morning. He stated that he made the decision to arrest Armstrong for possession of the drugs found in the center console because Armstrong was the owner of the vehicle and the vehicle was in Armstrong's care and control. Officer Lando also stated that the center console was equally accessible to the driver and the front seat passenger and that, while he could not remember whether the center console contained any enclosed compartments, the plastic bag filled with powder cocaine was "in plain view" to someone leaning inside the vehicle. He further testified, based on his training and experience, that drug dealers often work together and that the area where he encountered Armstrong's vehicle "is one of the worst areas in the city" for narcotics.

Officer Tableriou testified that while he was standing next to the passenger door of the Jetta, he could smell the odor of burnt marihuana and he detected the smell of marihuana on both Armstrong and Johnson. He stated that the presence of the marihuana in the ashtray and the cocaine in Johnson's hand provided the basis for the officers' search of the interior of the vehicle.

Officer Cortez, who frisked Armstrong for weapons, testified that he did not find any

weapons or a large amount of cash on Armstrong and that Armstrong was cooperative with the police during the entire episode.

The State also presented testimony from police officers who had been involved in two recent sting operations that had each led to Armstrong's arrest for delivery of a controlled substance. Both incidents involved Armstrong engaging undercover police officers from his car, the black Volkswagon Jetta, and offering them quantities of crack cocaine, the same substance found in the cylinder in the center console of Armstrong's car in this case. During one of these incidents, when Armstrong gave a crack rock to a "prostitute decoy" upon securing a promise that they would meet in her motel room and smoke it together, Armstrong had other passengers in the car with him. The extraneous-offense evidence was admitted over Armstrong's objection to show that Armstrong possessed the cocaine knowingly in the instant prosecution.[2]

The court found Armstrong guilty of possession of a controlled substance in an amount greater than four grams but less than 200 grams. On appeal, Armstrong's only issues are that the evidence was legally and factually insufficient to show that he exercised actual care, control, or custody over the cocaine in the center console of his vehicle.

**STANDARDS OF REVIEW**

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and decide whether any rational trier of fact could have found the essential elements of the

---

[2] Armstrong does not raise a point of error on appeal regarding the admission of the extraneous offenses, which were correctly admitted for the purpose of showing knowledge. *See* Tex. R. Evid. 404(b) (evidence of other crimes, wrongs, or bad acts admissible to show knowledge); *see also Hollis v. State*, 219 S.W.3d 446, 468 (Tex. App.—Austin 2007, no pet.).

offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). In addition, we should "determine whether the necessary inferences are reasonable based upon the cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). In so doing, we consider all evidence the fact finder was permitted to consider. *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004). The trial court, as fact finder, is the sole judge of the credibility of the witnesses and of the weight assigned to their testimony and may accept or reject any or all of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). We resolve any inconsistencies in the evidence in favor of the verdict. *Id.* The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

The State is required to prove every element of the offense set forth in the indictment beyond a reasonable doubt. *See Juarez v. State*, 198 S.W.3d 790, 793 (Tex. Crim. App. 2006). A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses it. Tex. Health & Safety Code Ann. § 481.115(a). Under this indictment, the State had to prove beyond a reasonable doubt that Armstrong (i) intentionally or knowingly (ii) possessed, i.e., exercised actual care, custody, control, and management over cocaine (iii) in an amount of more than four grams but less than 200 grams on or about the date set forth in the indictment. *See id.* §§ 481.002(38), .115(a), (d); *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

In determining factual sufficiency, we must weigh all the evidence in a neutral light and will reverse only if the evidence supporting guilt is so obviously weak as to render the conviction

6

clearly wrong and manifestly unjust, or if that evidence, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). An appellate court must be appropriately deferential to the verdict, in order to avoid substituting its own judgment for that of the fact finder. *Id.* In a bench trial, the trial judge is the sole fact finder, and his credibility and weight determinations are entitled to the same deference as that given to a jury. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). A factual sufficiency review must include an examination of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## ANALYSIS

*Legal Sufficiency*

Armstrong argues that there were insufficient "affirmative links" to create a reasonable inference that he was conscious of his connection with the drugs found in his car and that he exercised control over them. He contends that the evidence presented at trial in fact served to link Johnson, the passenger, to the cocaine found in the center console and that his mere ownership of the vehicle in which the drugs were found cannot by itself support a conviction for possession of the cocaine. Based on the cumulative force of all the evidence in the record, viewed in the light most favorable to the verdict, we hold that the evidence was legally sufficient to support Armstrong's conviction on the ground that he exercised actual care, control, and custody over the cocaine in the center console of his vehicle.

7

With regard to the offense of possession of a controlled substance, Texas courts have developed a number of factors that may be used to link an accused to contraband seized from a location over which the accused does not possess exclusive control. *See, e.g.*, *Brown*, 911 S.W.2d at 747; *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). "Whether this evidence is direct or circumstantial, it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405-06. This is what has until recently been described as the "affirmative links rule," terminology that has been abandoned in favor of simply referring to the evidentiary "links" between the accused and the contraband. *See Evans v. State*, 202 S.W.3d 153, 162 n.9 (Tex. Crim. App. 2006) (noting "'affirmative' adds nothing to the plain meaning of 'link'" and court will henceforth "use only 'link'").

The relevant links raised by the parties in this case include: (1) the defendant's close proximity to the contraband; (2) whether the contraband was conveniently accessible to the defendant; (3) whether the contraband was in plain view; (4) affirmative statements connecting the defendant to the contraband; (5) whether the defendant attempted to flee; (6) whether the defendant made furtive gestures; (7) whether there was a strong residual odor of the contraband; (8) whether other contraband or drug paraphernalia was present; (9) whether the defendant owned or had a right to possess the place where the drugs were found; (10) whether the defendant was the operator of the automobile in which contraband was found; (11) whether the defendant was found with a large amount of cash or weapons at the time of his arrest; and (12) whether the conduct of the defendant indicated consciousness of guilt. *See Gregory v. State*, 159 S.W.3d 254, 260 (Tex. App.—Texarkana 2001, pet. ref'd); *Porter v. State*, 873 S.W.2d 729, 733

(Tex. App.—Dallas 1994, pet. ref'd); *Whitworth*, 808 S.W.2d at 569. The trier of fact determines whether the factors presented at trial combine to form an affirmative link between the accused and the contraband sufficient to establish guilt beyond a reasonable doubt. *See Hall v. State*, 86 S.W.3d 235, 241 (Tex. App.—Austin 2002, pet. ref'd). The trier of fact makes this determination by examining the number and weight of the factors indicating control and lack of control of the contraband. *Id.* "The number of factors present is of less import than the logical force the factors have, alone or in combination, in establishing the elements of the offense." *Id.*; *see also Whitworth*, 808 S.W.2d at 569.

Armstrong maintains that the State relied on the mere fact that he was the owner and driver of the car to prove that he knowingly possessed the drugs found in the console. Citing a case from the Corpus Christi court of appeals, he urges that we should not permit "a single factor indicating guilt to trump any number of other factors which did not tend to establish possession." *See Jenkins v. State*, 76 S.W.3d 709, 719 n.13 (Tex. App.—Corpus Christi 2002, no pet.).

We disagree, however, that the State in this case proved only one factor linking Armstrong to the drugs in the center console. In addition to proving that Armstrong owned and operated the vehicle, the evidence established that Armstrong was in close proximity to the cocaine in the center console and that the cocaine was accessible to him.[3] The court of criminal appeals has held that evidence showing that drugs were located "within arm's reach" of the defendant "constitutes two extremely strong 'presence' and 'proximity' links." *Evans*, 202 S.W.3d at 163.

_____

[3] Under the links analysis, "proximity" refers to the physical distance between the accused and the contraband, while "accessibility" refers to the convenience with which the contraband can be reached. While these factors are related and are often discussed together, they represent two distinct links. *See Evans v. State*, 202 S.W.3d 153, 163 (Tex. Crim. App. 2006).

The fact that the center console was also in close proximity to Johnson does not negate the presence and proximity links with respect to Armstrong, as he suggests on appeal. *See, e.g.,* *Shortnacy v. State*, 474 S.W.2d 713, 715 (Tex. Crim. App. 1972) ("possession in a narcotic case need not be exclusive"); *Harvey v. State*, 487 S.W.2d 75, 77 (Tex. Crim. App. 1972) ("evidence which shows that the accused jointly possessed the contraband with another is sufficient").

As an additional link, Officer Lando testified that the drugs in the center console were in plain view to someone leaning into the passenger area of the vehicle. While there was a question raised as to whether a Volkswagon Jetta might contain any enclosed areas within its console and whether any of the cocaine might have been in such an enclosed compartment, it was for the fact finder to determine the credibility of the witness's testimony on this issue, and we must resolve any inconsistency concerning whether the cocaine was in plain view in favor of the verdict.

Furthermore, the record contains evidence that Armstrong attempted to flee, yet another link. Officer Lando testified that after he activated his overhead lights and Armstrong's vehicle came to a stop, Armstrong got out of the car and walked away towards the motel. By attempting to walk away, even at a "normal pace," Armstrong evaded detention, regardless of whether he later returned when instructed to do so. Walking away from the police could also reasonably be interpreted as conduct indicating Armstrong's consciousness of guilt, which is a further link.

In addition, the record includes Officer Tableriou's testimony that Armstrong had a strong odor of marihuana and that other contraband, a marihuana cigarette, was present in the ashtray of the vehicle near the console where the cocaine was found.

10

Moreover, Armstrong's statements to Officer Tableriou can be viewed as another link connecting him to the cocaine found in the console. The record shows that before the officers conducted a search of the vehicle, Armstrong called Officer Tableriou over to him and alerted him to the fact that Johnson had placed a bag in the trunk. He further stated that the officers should wait a while before looking in the trunk and investigating the bag, because it would look suspicious if they approached the trunk immediately after speaking with him. Armstrong's statements indicate both his knowledge that his vehicle contained contraband and his attempt to distance himself from the bag, which contained paraphernalia for manufacturing crack cocaine. As a result, the fact finder could reasonably have inferred from these statements that Armstrong knew of the existence of contraband in the vehicle and was attempting to avoid responsibility by blaming Johnson. This inference is further bolstered by the evidence of Armstrong's extraneous offenses; the presence of cocaine and paraphernalia in Armstrong's same black Jetta on two other recent occasions supports the assertion that Armstrong knowingly possessed cocaine in this instance.

While the number of links alone does not dictate the outcome of the analysis, Armstrong's assertion that "the only factor" linking him to the drugs "was the fact that [he] owned the car" is unsupported by the record. Although it is significant that Armstrong owned and was exercising control over the vehicle, facts making it less likely that Johnson could have placed a portion of his cocaine in the center console without Armstrong's knowledge, this was not the only evidence before the trial court. The State argues that the totality of the circumstantial evidence, which includes the evidence that the men were stopped in an area known for narcotics traffic at 2 a.m. and Officer Lando's testimony that drug dealers in that area commonly work in pairs, is

11

sufficient to support a rational finding, beyond a reasonable doubt, that Armstrong exercised actual care, control, or custody over the cocaine found in the console of his vehicle. We agree.

Armstrong argues, however, that Johnson was also in close proximity to the same drugs and emphasizes that it was Johnson—not Armstrong—who made furtive gestures, resisted search and arrest, acted nervous, smelled of marihuana, had a large amount of money on him, gave a false name to the police, and had on his person the same two substances discovered in the console of the Jetta.[4] Thus, Armstrong's argument is similar to that made by the appellant in *Whitworth* who, in an attempt to persuade us that the evidence was insufficient to establish that he knowingly possessed marihuana, argued that "the State failed to disprove that other individuals standing around his car while smoking marihuana could have placed the contraband in his car without his knowledge or consent." 884 S.W.2d at 187. In urging us to weigh his culpability relative to Johnson's, Armstrong is essentially asking that we negate every other reasonable hypothesis raised by the evidence other than his guilt in order to sustain the conviction. This is not the standard for reviewing legal sufficiency in Texas. *See Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991); *Whitworth*, 884 S.W.2d at 187. Rather, we apply the rationality standard of *Jackson v. Virginia* to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Geesa*, 820 S.W.2d at 158; *see also Poindexter*, 153 S.W.3d at 405. In so doing, we emphasize the fact that any evidence that Johnson was also in possession of cocaine does not necessarily negate Armstrong's own connections to the drugs, based upon Armstrong's affirmative statements and conduct as evidenced in the record. Johnson's furtive gestures or attempts to resist

---

[4] Johnson was charged with possession of the 11.4 grams of crack cocaine and 0.8 grams of powder cocaine found in his hand.

12

arrest, for example, are not factors establishing that *Armstrong* did not possess the drugs in the console. *See Jenkins*, 76 S.W.3d at 719 n.13. Such evidence simply reinforces that Johnson was also guilty of the same offense.

Even taking into consideration the evidence of Johnson's links to the drugs found in the console, however, the fact finder could have determined, based on the proximity and accessibility of the drugs to both men and Officer Lando's testimony that drug dealers commonly work in pairs, that Armstrong and Johnson were working in tandem. The trial court was entitled to believe Armstrong's alternative hypothesis, that all of the drugs belonged to Johnson and he was simply giving Johnson a ride, but it was not required to do so, and by its verdict, it clearly rejected this alternate scenario. *See Evans*, 202 S.W.3d at 165.

Therefore, because the evidence, viewed in the light most favorable to the verdict, is sufficient to establish beyond a reasonable doubt that Armstrong knowingly possessed the cocaine found in his vehicle, we hold that it was legally sufficient to support the conviction.

*Factual Sufficiency*

On the issue of the factual sufficiency of the evidence, Armstrong repeats the arguments presented on the issue of legal sufficiency, asserting that the verdict is so against the great weight and preponderance of the evidence that it should be overturned.

As discussed above, the State presented evidence that the drugs were found in plain view in Armstrong's car, that Armstrong was driving the vehicle when the drugs were discovered, that the drugs were in close proximity to Armstrong and were easily accessible to him, that Armstrong attempted to flee, that Armstrong's statements and conduct indicated a consciousness of

13

guilt, and that Armstrong made affirmative statements indicating he knew that his vehicle contained contraband.

Viewing all the evidence in a neutral light, the evidence of Armstrong's links to the cocaine in his vehicle is not so weak that the verdict seems clearly wrong or manifestly unjust. Therefore, we must compare the evidence presented by Armstrong to the evidence presented by the State in order to determine whether the verdict is against the great weight and preponderance of the evidence. *See Vasquez*, 67 S.W.3d at 236.

In support of his factual sufficiency challenge, Armstrong reasserts the evidence that he argues proves Johnson's knowledge of and control over the drugs found in the console. He also points to Officer Lando's statement that he would not have arrested Armstrong for possession of the drugs in the center console if Armstrong had not owned the vehicle and if he had instead been the passenger rather than the driver.

The State responds that Armstrong's claim overlooks the evidence presented at trial that Johnson and Armstrong could have been working together to sell the cocaine. This evidence includes Officer Lando's uncontradicted testimony that it was "very common" for drug dealers to work in pairs; the fact that Armstrong and Johnson were driving together at 2 a.m. in an area known for heavy narcotics traffic; testimony that the two men smelled of marihuana and that there was a marihuana cigarette in the ashtray, indicating that they were smoking marihuana together; and the two men's suspicious behavior when Officer Lando attempted to initiate a traffic stop and they instead exited the car and began walking towards the motel together.

Armstrong's evidence regarding Johnson's conduct does not preponderate against the State's evidence of Armstrong's links to the cocaine in the console of his vehicle and the evidence

14

suggesting Armstrong and Johnson were working in concert to support a finding that the verdict is against the great weight and preponderance of the evidence. We therefore hold that the evidence was factually sufficient to support Armstrong's conviction.

## CONCLUSION

Because we find that the evidence was legally and factually sufficient to show that Armstrong exercised actual care, control, or custody over the cocaine found in his vehicle, we affirm the judgment of conviction.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: February 21, 2008

Do Not Publish

15