

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-060-CR**

DAVID R. POYNTER                                                     APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

**Introduction**

Appellant David R. Poynter appeals his conviction for aggravated assault of a public servant. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (Vernon Supp. 2008). In four related points, he asserts that the

---

[1] *See* Tex. R. App. P. 47.4.

evidence admitted at his trial is legally and factually insufficient to support his conviction. We affirm.

## Background Facts

On December 22, 2005, Fort Worth Police Department Officer Jerry Cedillo received an anonymous tip regarding the presence of methamphetamine at a motel room in Saginaw. He arrived at the motel at approximately 8:00 p.m., and he saw a Mercedes-Benz car parked in front of the suspected motel room. After another Fort Worth officer (Sergeant Terry Porter) joined him at the motel, Officer Cedillo saw Poynter leave the motel room and get in the car.

Officer Cedillo and Sergeant Porter, in unmarked vehicles, followed Poynter as he began to travel on Interstate Highway 820 (IH 820). Sergeant Porter saw Poynter commit traffic violations; Sergeant Porter then requested that a marked police vehicle join Officer Cedillo and him to assist with a traffic stop as Poynter continued to travel several more miles. Officer Kirk Massey heard the request and found Poynter's car; Officer John David Riggall, in his own marked patrol car, joined in Officer Massey's pursuit; Officer Massey turned on his patrol lights, but Poynter did not stop.[2]

---

[2] At that time, Officer Cedillo returned to the motel to prevent anyone from destroying evidence there. He eventually entered Poynter's motel room, where he discovered used syringes.

Poynter reversed his direction on IH 820;[3] while traveling at about eighty miles per hour, he then exited towards the motel with Officer Massey and Officer Riggall following him. Poynter returned to IH 820,[4] while continuing to evade the police (with Sergeant H.G. Baxter joining the pursuit). Eventually, at an exit off of IH 820, an assisting officer placed a spike strip; Poynter ran over the strip, which deflated one of his tires. Poynter reduced his speed, but he did not stop.

Poynter returned to the motel and circled its parking lot. He then left the parking lot, eventually returned to the motel again, and left the parking lot

---

[3] When Poynter reversed direction, Officer Massey turned on his patrol car's sirens.

[4] At some point, a police helicopter followed the officers' chase of Poynter.

3

another time; while doing so, he struck Sergeant Baxter's marked patrol car.[5] Poynter again went to IH 820.

Fort Worth Lieutenant Edmund Daniels joined the pursuit; by driving parallel to Poynter, he prevented Poynter from crossing a median, which would have allowed him to unsafely drive in opposite lanes of traffic. As Poynter moved back onto the highway to drive in the correct direction of traffic, Officer Riggall, standing on the outside shoulder of the highway (between the access road and the highway), attempted to set up another spike strip to flatten Poynter's other tires. Poynter traveled across three lanes of traffic, toward the shoulder of the highway, directly to where Officer Riggall (who was wearing his uniform) was standing. Officer Riggall ran off the shoulder of the highway and

---

[5] Sergeant Baxter had parked the patrol car in response to Poynter's temporarily stopping his own car. Officer Massey and Officer Riggall had moved their patrol cars to block one of the motel's exits. Sergeant Baxter testified,

> I had opened the door and was literally in the process of starting to put my foot out when I heard commotion and I looked up and saw the vehicle coming directly towards me.
>
> . . . .
>
> I slammed the door . . . and just braced myself for impact because it was obvious he was fixing to ram me.

Sergeant Baxter sustained neck injuries requiring treatment for two months; his patrol car had to be towed from the scene.

into a ditch to avoid being struck by Poynter's car.[6] Lieutenant Daniels pinned Poynter's car against a guardrail, and the pursuit finally ended.[7]

In April 2006, a Tarrant County grand jury indicted Poynter; the indictment alleged that Poynter committed aggravated assault on a public servant by intentionally or knowingly threatening bodily injury to Officer Riggall while using his car as a deadly weapon.[8] The indictment also contained a habitual offender paragraph that alleged that Poynter had previously been convicted of two other felony offenses.

---

[6] Officer Riggall stated that Poynter went from the center lane of the highway to drive directly in his direction at about thirty miles an hour. He explained,

> [I tried] to throw [the spike strip] as far as I could out there because [Poynter had] been driving back across the lane. I looked up and I saw that his headlights were pointing towards me. He was actually driving back across the outside lane towards me.
>
> . . . .
>
> At that point, survival instinct kicked in and I turned and ran back across the field or across the ditch towards my patrol unit.

[7] Video tapes of the officers' chase of Poynter's car were mistakenly erased. Sergeant Porter testified that when officers took Poynter out of his vehicle, he showed signs of intoxication—he could not support his own weight and his eyes were extremely dilated. Officer Riggall stated that Poynter did not appear to be intoxicated.

[8] The indictment alleged that Poynter's car, in the manner of its intended use, was capable of causing death or serious bodily injury.

5

The trial court appointed Poynter's counsel and the parties filed various pretrial documents, then Poynter's trial began with his not guilty plea. After the parties concluded voir dire and they submitted their opening arguments, the State presented its case, which consisted of testimony from the officers who had been involved in Poynter's chase. Poynter did not call any witnesses. After the court read its charge to the jury and both sides presented closing arguments,[9] the jury found Poynter guilty. After hearing evidence regarding Poynter's punishment, the jury sentenced him to life in prison.

## Standards of Review and Applicable Law

In his four points, Poynter contends that the evidence presented at trial (as summarized above) is not legally or factually sufficient to support his conviction.

**Legal sufficiency**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v.*

---

[9] In his closing argument, Poynter's counsel theorized that Poynter did not intend to drive at Officer Riggall, but that instead, Poynter either lost control of his car or was just attempting to continue to evade the officers.

6

*Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. In determining the legal sufficiency of the evidence to show a

defendant's intent, and faced with a record that supports conflicting inferences, we "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

**Factual sufficiency**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000).

Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint

9

on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict").

**The elements of Poynter's crime**

The jury convicted Poynter of aggravated assault on a public servant. Under the indictment in this case, that crime required the State to prove that Poynter intentionally or knowingly threatened Officer Riggall with imminent bodily injury from a deadly weapon while knowing that Officer Riggall was a public servant and while Officer Riggall was lawfully discharging his official duty. *Dobbins v. State*, 228 S.W.3d 761, 764 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd); *Dunklin v. State*, 194 S.W.3d 14, 21–22 (Tex. App.—Tyler 2006, no pet.); *see* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B).

**Analysis**

Poynter challenges the evidence supporting the jury's implicit findings that he intentionally or knowingly threatened Officer Riggall and that he used a deadly weapon; he does not challenge that Officer Riggall is a public servant or

10

that Officer Riggall was lawfully discharging his duty during the incident described above.

**The sufficiency of the evidence supporting Poynter's intentional or knowing threat of Officer Riggall**

In his first and second points, Poynter respectively challenges the legal and factual sufficiency of the evidence supporting that he intentionally or knowingly threatened Officer Riggall. He contends that his conduct in this case was "misinterpreted because he did not intend to hurt Officer Riggall. Instead, [he] was attempting to evade arrest. The evidence of Officer Riggall's fear . . . is not sufficient to establish [Poynter's] intent to threaten." Poynter acted intentionally by threatening Officer Riggall if it was his conscious objective or desire to do so; Poynter acted knowingly if he was aware that such a threat would occur. Tex. Penal Code Ann. § 6.03(a), (b) (Vernon 2003).

The intentional or knowing state of mind of a defendant may be proved without direct evidence; such a state of mind may be "inferred from circumstantial evidence such as [the defendant's] acts, words, [or] conduct." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see Mashburn v. State*, 272 S.W.3d 1, 14 (Tex. App.—Fort Worth 2008, pet. struck); *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (explaining that "[p]roof of a culpable mental state almost invariably

11

depends upon circumstantial evidence"). When reviewing the jury's implicit decision to infer that Poynter intentionally or knowingly threatened Officer Riggall, it is "not necessary that [we] find to [our] own satisfaction that such was [his] intent. It is enough for us to find that 'any' rational jury could have so found beyond a reasonable doubt." *Brimage v. State*, 918 S.W.2d 466, 476 (Tex. Crim. App. 1994).

Applying these standards, the evidence in the record is legally sufficient to show that Poynter intentionally or knowingly threatened Officer Riggall by driving at him. The uncontradicted testimony of three eyewitnesses indicated that Poynter

- "moved from the center lane all the way over to the other lane and onto the shoulder, and Officer Riggall ran . . . to keep from being struck" (Sergeant Randy Whisenhunt's testimony);

- moved "right across all three lanes of traffic toward the shoulder," where he "[w]ent directly for Officer Riggall, drove directly towards him," to the extent that Officer Riggall "jumped out of the roadway" (Lieutenant Daniels's testimony); and

- changed direction so that he was driving "across the outside lane towards" Officer Riggall (Officer Riggall's testimony).

In fact, while observing Poynter's maneuver, Sergeant Whisenhunt yelled to Officer Riggall, "[Poynter's] going to try and hit you." The testimony of two of the three officers indicated that before Poynter made his move, he had been

12

maintaining a single lane of traffic, and he had been successfully controlling his car. The evidence established that after almost hitting Officer Riggall with his car, Poynter simply moved back to the center lane of the highway and continued eastbound. Finally, the jury heard testimony regarding Poynter's willingness to make contact with his vehicle—just a few minutes before driving at Officer Riggall, Poynter struck Sergeant Baxter's patrol car.

Viewing this evidence and the other evidence summarized above in the light most favorable to the jury's verdict and deferring to the jury's implicit inference about the weight of the evidence, we hold that the evidence sufficiently indicates Poynter's intent or knowledge regarding his threat to cause imminent harm to Officer' Riggall. We therefore overrule his first point.

We hold that the evidence is likewise sufficient when viewed according to factual sufficiency standards. Because there was no evidence presented at trial conflicting with the evidence described above, the jury's determination about Poynter's state of mind could only be reversed for factual insufficiency if the evidence was so weak that the determination was clearly wrong and manifestly unjust. *See Lancon,* 253 S.W.3d at 705. We cannot conclude that standard has been satisfied.

First, although Poynter has offered possible reasons for driving at Officer Riggall[10] other than intentionally or knowingly threatening him,[11] he presented no evidence at trial to support those reasons. Next, Poynter's assertion that he was trying only to evade the officers who were pursuing him when he drove at Officer Riggall does not make sense because there is nothing in the record indicating that Poynter could not have continued his progression through the center lane of the highway as he did before and after his diversion in Officer Riggall's direction. Finally, even if there was evidence in the record that supported Poynter's explanation of his conduct, the jury was free to either believe or disbelieve that conflicting theory. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating that it "is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories"); *Gregory v. State*, 159 S.W.3d 254, 261 (Tex. App.—Beaumont 2005, pet. ref'd).

Affording the jury's decision appropriate deference under the authority cited above, we conclude that the evidence is factually sufficient to show that

---

[10] Importantly, he does not dispute that he drove his car in Officer Riggall's direction; rather, he asserts that his "conduct was misinterpreted."

[11] As noted above, on appeal, Poynter contends that he was attempting to evade arrest; during closing argument at trial, his counsel also asserted that he may have lost control of his car.

Poynter intentionally or knowingly threatened Officer Riggall. Therefore, we overrule Poynter's second point.

**The sufficiency of the evidence supporting Poynter's use of his car as a deadly weapon**

In his third and fourth points, Poynter respectively challenges the legal and factual sufficiency of the evidence indicating that he used his car as a deadly weapon. He contends that he did not drive his car in a manner clearly endangering Officer Riggall's life.

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(b) (Vernon Supp. 2008); *see Butler v. State*, 928 S.W.2d 286, 288 (Tex. App.—Fort Worth 1996, pet. ref'd). A car can be a deadly weapon. *Butler*, 928 S.W.2d at 288; *see Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (explaining that an "automobile can be a deadly weapon if it is driven so as to endanger lives"); *Davis v. State*, 964 S.W.2d 352, 354 (Tex. App.—Fort Worth 1998, no pet.) (holding that the defendant's driving his car in oncoming lanes of traffic qualified the car as a deadly weapon).

Applying the standards set forth above, we hold that the evidence admitted at Poynter's trial is legally sufficient to show that he used his car as a deadly weapon. As described above, three eyewitnesses testified that

15

Poynter drove his car directly at Officer Riggall and that Officer Riggall had to quickly evade Poynter's car to prevent being struck. Lieutenant Daniels testified that Officer Riggall was "very much" in danger of being hurt; he also opined that Poynter's car was capable of causing death or serious bodily injury. Sergeant Whisenhunt also testified that Poynter could have caused Officer Riggall to die or sustain serious bodily injuries. Because this evidence could have allowed a rational jury to determine beyond a reasonable doubt that Poynter used his car as a deadly weapon as defined above, it is legally sufficient. *Clayton*, 235 S.W.3d at 778. Thus, we overrule Poynter's third point.

The evidence is also sufficient when considered under the factual sufficiency standard because it is not so weak that the jury's determination was clearly wrong and manifestly unjust. *Lancon*, 253 S.W.3d at 704. Poynter did not present any evidence to contradict the opinions and observations of the eyewitnesses that his driving at Officer Riggall endangered Officer Riggall's life. Thus, the jury's determination that Poynter used his car as a deadly weapon was based on factually sufficient evidence. *See Cates*, 102 S.W.3d at 738; *see also Tarin v. State*, No. 08-02-00202-CR, 2004 WL 362601, at *4 (Tex. App.—El Paso Feb. 25, 2004, no pet.) (mem. op., not designated for publication) (holding that acceleration of a motorcycle at an officer, coupled

16

with testimony that the motorcycle was capable of causing death or serious bodily injury, when the defendant "did not provide evidence diminishing the impact of the State's evidence," was factually sufficient to qualify the motorcycle as a deadly weapon in an aggravated assault case).  We therefore overrule Poynter's fourth point.

## Conclusion

Having overruled all of Poynter's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 30, 2009

17